**200 So. 4**

**TOLLEY v. KARCHER et al.**

No. 36031.

Jan. 6, 1941.

Guy J. D'Antonio, of New Orleans, for plaintiff.

Casey, Babin & Casey and Joseph S. Casey, all of New Orleans, for defendants.

LAND, Justice.

On September 4, 1940, plaintiff, Mrs. Leonie P. Tolley, filed a petition against her son, Bert Karcher, and against her mother, Mrs. Joseph C. Klein, widow, coupled with a rule to show cause why they should not be ordered to pay alimony to plaintiff in the cumulative sum of seventeen and 50/100 ($17.50) dollars per week. The order was signed on September 4, 1940, and service was duly made upon each defendant.

Defendant, Bert Karcher, filed an exception of no cause or right of action, as did Mrs. Klein, with an additional exception of misjoinder of parties defendant.

Defendants, reserving their rights under the exceptions, filed a joint answer denying all of the essential allegations of plaintiff and setting up certain defenses.

At the time of the trial, all exceptions were referred to the merits and there was judgment in favor of plaintiff against her son, Bert Karcher, for alimony in the sum of twenty ($20) dollars per month, and dismissing her claim for alimony against her mother, Mrs. Joseph C. Klein.

Defendant, Bert Karcher, has appealed from the judgment condemning him to pay alimony to plaintiff, and plaintiff has answered the appeal praying for judgment against her son in the amount originally sued for. Plaintiff has also appealed from the judgment dismissing her claim for alimony against her mother.

(1) The claims of plaintiff against her son and against her mother are based upon the following articles of the Revised Civil Code:

"227. Fathers and mothers, by the very act of marrying, contract together the obligation of *supporting, maintaining, and educating* their children." (Italics ours.) This article clearly relates to *minor* children.

"229. *Children* are bound to maintain their *father and mother* and other ascendants, *who are in need; and the relatives* in the direct ascending line *are likewise bound to maintain their needy descendants,* this obligation *being reciprocal.*

"They are also bound to render reciprocally all the services which their situation can require, if they should become insane." (Italics ours.)

The plaintiff in this case is a middle-aged woman in need.

 The trial judge held correctly, under Article 229 of the Revised Civil Code, that the son was obliged to maintain his mother, an ascendant in need; but clearly erred in holding that plaintiff's mother, an ascendant, was under no obligation, under the same article, to support plaintiff, a daughter of hers in need.

 Article 229 of the Revised Civil Code is clear and free from all ambiguity. It imposes *a reciprocal obligation upon children* to maintain their father and mother *and other ascendants* who are in need, *and upon relatives in the direct ascending line to maintain their needy descendants.* The mother is the nearest relative in the ascending line and, if this article may be interpreted as imposing no obligation *upon her, as the nearest ascendant,* to maintain her children, *her nearest descendants in need,* it is obvious that no such obligation may be imposed upon more remote ascendants, such as a grandfather or grandmother, to maintain their descendants of more remote degree. Such an interpretation would virtually repeal that part of Article 229 of the Civil Code which declares "and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal."

 We find no language in Article 229 which limits *to minor children* the support which ascendants are obliged to give to needy descendants. To so hold would be nothing short of judicial legislation.

(2) From the property left Mrs. Joseph C. Klein by her husband, she receives a rental of $174 a month. And from her own separate property, a rental of $58 a month, making a total of $232 a month.

On cross-examination, by attorney for plaintiff, Mrs. Klein testified as follows:

"Q. Mrs. Klein, you are the mother of Mrs. Tolley here? A. Yes, sir.

"Q. She was born as issue of the marriage between yourself and Mr. Joseph C. Klein? A. Yes, sir.

* * * * *

"Q. Now, Mrs. Klein, your daughter has been over to see you several times and even asked to live in your house, hasn't she? A. Yes, sir.

"Q. And you have refused her? A. Sure, I have refused her.

"Q. Your daughter has also told you that she had no money. Is that correct? A. Yes, sir.

"Q. And your daughter also told you that she was sick, and needed help. Is that correct? Didn't she tell you that? A. Yes, sir.

"Q. The doctor who was treating her, Doctor Gillespie, also told you that she was sick, didn't he? A. Yes, sir.

"Q. And he told you she needed attention, didn't he? A. Yes, sir.

"Q. Your daughter also told you that her eyes were bad, and she needed glasses; didn't she tell you that? A. Yes, sir.

"Q. And you refused her any help at all, didn't you? A. Well, I told her *she had a husband to help her.*

"Q. But you refused, did you not? A. I refused; yes, sir.

"Q. How many rooms are there in the house there where you live, Mrs. Klein? A. Five.

"Q. Five rooms? A. Yes, sir.

"Q. Mrs. Klein, isn't it a fact also that ladies from the Welfare Service, or Family Service, or the Welfare Society, came to you and told you about your daughter, and asked you to try to help her? A. Yes, sir.

"Q. Isn't it also a fact, Mrs. Klein, that your daughter has asked her son to help her, too, and was refused by him also? A. I don't know about that; I didn't hear that.

"Q. It didn't happen in your presence, did it? A. No, sir.

 \* \* \* \* \*

"Q. Isn't it a fact also, Mrs. Klein, that about two weeks ago your daughter was over to see you with an aunt of hers? Is that your sister-in-law? That lady who was with her? Mrs. Hernandez? Is that your sister-in-law?

 \* \* \* \* \*

"A. Yes, sir.

"Q. Didn't your daughter come over there to your home with Mrs. Hernandez, and didn't she also talk to you and beg you to take care of your daughter? How she was ill? Didn't she do that, too? A. Yes, sir.

"Q. Isn't it also a fact that while your daughter was in your home on that occasion with Mrs. Hernandez, while she was there she became ill and fainted? Isn't that a fact that she became ill and fainted in your home? A. Yes, sir.

"Q. You still refused to permit her to stay at that time, when your daughter wanted to stay in your house when she became ill and fainted on that occasion? Isn't that a fact? A. Yes, sir.

"Q. And you refused her?

"Q. *At the time. your daughter married, Mrs. Klein, didn't your husband, Mrs. Klein, take her to St. Joseph's church and give her away in marriage?* A. *Yes, sir; he did."* (Italics ours.)

(3) Respondents, in their joint answer, allege "that your petitioner, the daughter of respondent, Mrs. Catherine Fish, widow of Joseph C. Klein, *while still a minor and contrary to the wishes and without the consent of her parents did enter into the contract of marriage; that her parents and especially her mother, one of your respondents, at no time forgave petitioner or acquiesced in said marriage."* (Italics ours.)

Petitioner did not marry, while a minor, without the consent of her father, who gave her away in marriage, and clearly acquiesced therein. Petitioner was not disinherited by her father. On the contrary, on July 9, 1940, she was placed in possession of the naked ownership of an undivided one-sixth interest in certain real estate which formed part of the estate of her father, Joseph C. Klein, as will appear by reference to the proceedings entitled,

"Succession of Joseph C. Klein," No. 234-816 of the docket of the Civil District Court, Parish of Orleans.

■■■ It is elementary that an heir cannot be disinherited in this State prior to the death of the testator. The mother of plaintiff is still alive. Plaintiff cannot be disinherited by her mother, except in her last will and testament, which takes effect only at her death. Besides, the other heirs assume the burden of the proof of the cause of disinherison before same can become effective. R.C.C. Article 1621, subd. 10; R.C.C. Article 1624; R.C.C. Article 1618. The mere fact then that plaintiff married, while a minor, without the consent of her mother, is no legal ground for the refusal of her mother to pay her alimony, which plaintiff demands in this case under the articles of the Civil Code above cited.

(4) Respondents also allege in their joint answer that "your petitioner, the mother of respondent, Albert Karcher, abandoned him when a mere child and that from that time until he was of age and began supporting himself he was raised and supported entirely by his grandparents." The fault dealt with so severely in the daughter is a still greater fault in the defendant. She is of means, and will give neither sympathy nor help to her needy descendant, the petitioner in this case.

(5) Bert Karcher, son of plaintiff, testified as follows under cross-examination by counsel for plaintiff:

"Q. Mrs. Tolley here; is she your mother? A. Yes, sir.

"Q. Isn't it a fact, Mr. Karcher, that your mother has been to you on several occasions telling you she was destitute and in need of assistance? A. Yes, sir.

"Q. Isn't it a fact also that she told you that she was ill, and needed medical attention, and medicine, and didn't have any money to buy medicine with? A. Yes, sir.

"Q. Isn't it also a fact that she went to your place of business and begged your assistance, and asked you to take her into your home? A. Yes, sir.

"Q. And you refused these things? A. That's right.

* * * * * *

"Q. Isn't it also a fact that the representatives of the Welfare Society, or the Family Welfare, endeavored to get in touch with you to talk with you about your mother? A. Yes, sir; they tried to get in touch with me.

"Q. And you refused to see them? A. That's right.

"Q. You made appointments and didn't keep them? A. Yes, sir.

"Q. That was Mrs. Rice, and Miss Rice? A. I think so."

(6) It is also set up in the joint answer of respondents "that petitioner is a married woman; that her husband is still living and that petitioner is not divorced from her present husband."

The husband, however, is living in Baltimore, Maryland, and is outside of the jurisdiction of the Civil District Court for

the Parish of Orleans. Besides, plaintiff testified as follows in relation to her husband:

"Q. Mrs. Tolley, you are not living with your husband, are you? A. No, sir.

"Q. Is it your intention to return to him? A. I never will go back to my husband. He abused me, and struck me, and he beats me, and he drinks and doesn't support me.

"Q. What is your intention as to making New Orleans your permanent home? A. My permanent home is here in New Orleans. I intend to make it my permanent home.

"Q. Will you tell us whether or not you have any clothing, or any money to buy clothing? A. No, I don't have money enough for car-fare outside of clothes. I never even had money to go into mourning when my father died.

"Q. What? A. I couldn't even go into mourning when my father died. I only had one black dress. (Witness weeping.)

"Q. Tell me, what was your father's attitude towards you? A. My father always loved me, and I loved him. He used to beg me in letters and said if it only wasn't for mamma you could come home— (The witness is crying again)."

(7) It is also alleged in the joint answer filed by respondents "that your petitioner is the owner of an undivided *one-sixth interest* in several pieces of real estate situated in the City of New Orleans, State of Louisiana, which could be disposed of or mortgaged by your petitioner."

Defendants attempted to prove that plaintiff is not destitute because she has a one-sixth interest in the naked ownership of certain real estate in the City of New Orleans, inherited from her father. They likewise sought to show that plaintiff had declined an offer of $2,000 for this interest. In the first place, plaintiff is not compelled to sacrifice her interest. In the second place, she was unable either to sell or mortgage her interest in property of which she did not have the use and enjoyment. Had she had the usufruct, there might have been some merit in defendants' contention.

In the case of Hava v. Chavigny, 146 La. 84, 83 So. 417, it was held: "That wife owned undivided interest in property and would ultimately receive certain funds in hands of court, and received $30 per month from son who lives with her, as price of his board, did not render payment of alimony pendente lite unnecessary under Rev. Civ.Code, art. 148, where such property and funds *were not available at time of application for alimony.*" (Italics ours.) As a matter of fact, the only offer received by plaintiff for her interest was one for $2,-000 by plaintiff's mother, which was grossly inadequate.

(8) Bert Karcher, son of plaintiff, testified that he earns approximately one hundred dollars per month; that his total expenses per month are Ninety-four and 68/100 dollars, and to this must be added the costs of his own and wife's clothing, besides amusement. It must be remembered that Karcher sports around in a new Chrysler car, and it cannot be well pre-

sumed that his family is doing without clothes in the meantime. The trial judge was of the opinion that Karcher's expense account was highly inflated, as a judgment was rendered against him for $20 per month alimony in favor of plaintiff, his mother.

Be that as it may, the court feels satisfied that the defendant, Bert Karcher, is able to pay his mother at least $2.50 per week alimony, and that the defendant, Mrs. Joseph C. Klein, mother of plaintiff, is able to pay her at least $10 per week alimony.

(9) To the petition, defendants filed an exception of misjoinder as well as an exception of no right or cause of action.

The demands against the mother and against the son are cumulative. The petition asks for the same relief against both, a judgment for alimony. Thus it would appear that the cumulation of demands is properly made. The exception to the petition on the grounds of misjoinder will therefore be overruled.

For the reasons already assigned in this opinion, plaintiff has a right and cause of action against both defendants for alimony in this case. The exception of no right or cause of action will therefore be overruled.

(10) The court is of the opinion that the law and evidence are in favor of the plaintiff in rule, Mrs. Leonie P. Tolley, and against the defendants in rule, Bert Karcher and Mrs. Joseph C. Klein, for the reasons assigned in the opinion in this case.

It is ordered, adjudged and decreed that the judgment appealed from be annulled and reversed.

It is now ordered, adjudged and decreed that the said rule be made absolute, and that the defendant, Bert Karcher, be ordered and condemned to pay to plaintiff in rule, Mrs. Leonie P. Tolley, alimony at the rate of two and 50/100 dollars per week, beginning from the date of trial of alimony, September 12, 1940.

It is further ordered, adjudged and decreed that the defendant, Mrs. Joseph C. Klein, be ordered and condemned to pay to plaintiff in rule, Mrs. Leonie P. Tolley, alimony at the rate of ten dollars per week, beginning from the date of trial of alimony, September 12, 1940.

It is further ordered, adjudged and decreed that exception of misjoinder and exception of no right or cause of action be overruled, and that defendants pay all costs of appeal, and of the Civil District Court for the Parish of Orleans.

O'NIELL, C. J., does not take part.