REGAN, Judge.
The plaintiffs, Jules J. Prats, Sr., and Beatrice Araguel Prats, father and stepmother respectively, instituted this suit against defendant, Jules J. Prats, Jr., their son, endeavoring to recover the sum of $1,-249.16, representing board, lodging, laundry, clothing, equipment and various moneys ad *206 vanced to him from July, 1951 through August 14, 1952 or for a period of approximately thirteen months.
Defendant pleaded the exception of mis-joinder and of no right or cause of action, the first of which was overruled and the latter referred to the merits. He then answered generally denying the allegations of the petition and, by supplemental petition, more pertinently asserted that he had never agreed to repay plaintiffs for clothing, board, lodging, etc., or for any moneys expended by them in his behalf; that plaintiffs, in conformity with the laws of this State, were merely discharging a legal obligation.
From a judgment in favor of plaintiffs in the amount of $212.74, they have prosecuted this appeal.
Counsel for defendant reurges the exception of no right or cause of action as to the want of capacity of Mrs. Prats to stand in judgment inasmuch as this is a community debt and Mr. Prats, as head and master thereof, is the only one entitled to prosecute this claim.
The law appea'rs to be so well settled that a suit for the restitution of a community asset can only be prosecuted by the husband in his capacity as head and master of the community and, therefore, the wife is inhibited from standing in judgment, that we doubt the need of citation in support thereof. However, in two relatively recent cases we again enunciated the foregoing principle of law. Casente v. Lloyd, La.App. 1953, 68 So.2d 329; Bruno v. Williams, La.App., 76 So.2d 41. See also LSA-Civil Code, Article 2404.
We, therefore, are of the opinion that this exception should have been maintained.
The record reveals that when the defendant was seven years of age his natural mother died and two years later his father married Beatrice Araguel; the defendant resided in the family home until January of 1938, at which time he had attained the age of seventeen years. He then entered the Jesuits Seminary where he engaged in study for the priesthood until July, 1951, when, at the age of thirty yea'rs, he abandoned the Seminary to resume his life as a layman. His parents invited him to return to the family home where he was provided with food, shelter, clothing and other necessities. In the latter part of July, 1951, his parents furnished transportation and incidental expenses to and from Washington, D. C., in order to facilitate him in procuring employment with the State Department. This position, due to over age, failed to materialize and he then returned home.
The record reflects that defendant was fundamentally educated to teach and, in conformity with his training, it was his initial intention to obtain a position as a teacher in a public preparatory school. However, persistent effort and inquiry revealed that he could not qualify therefor since he had not formally obtained a Master’s Degree. He thus became relegated to any employment he could secure. On or about August 9, 1951, he obtained a menial position with the Davidson Dental Supply Company, whereupon he left his parents’ home and rented a small apartment so that he could attain some independence and privacy since his parents operated a boarding house, although he continued to have meals with them. He remained employed approximately four weeks and then relinquished it because, he related “I was not adjusted to the world yet. My whole training was completely classical and literary and I had very little aptitude for the business world and psychologically I couldn’t take it, I just couldn’t stick at it, that’s all.” He returned to the family home. Shortly thereafter he secured employment in a grocery store as a cashier, which endured for one week, or until the owner employed his brother in this position. He continued to reside in the' home of his parents until February 2, 1952, when a decision was reached to matriculate at the University of Alabama where he hoped to formally obtain a Master’s Degree, which would qualify him to teach in the high schools of the City of New Orleans. Obviously this decision entailed the-expenditure of money and, therefore, the necessary financial arrangements to procu're *207 these funds were made for his journey to and residence in Alabama. Defendant obtained a loan of $300 from a local finance company, which was guaranteed by his stepmother, Mrs. Prats, and by virtue of the renewal of an existing loan in her name in the same finance company, she was able to procure from this source $30 and from other sources $70 or a total of $100, which she, in turn, gave to the defendant. He entered and thereafter remained at the University of Alabama for about six weeks or from February 2, 1952 to March 20, 1952, when he abandoned the desire to pursue this objective and returned home. However, on March 17, 1952, in order to apprise his parents of this unexpected decision, he ad-, dressed a letter to them which, in substance related “I am returning Thursday night 9:15 p.m. * * * There is no longer any need for me to remain here. It would be a waste of money to do so. * * * Dearest Mother and Dad I must return to the Seminary and continue towards the priesthood * * *. Do not think that you have lost money on this deal. I had to get away where I could be alone and pray. That is the reason for my trip here. I am sure that Our Lord will find me the means to repay you in full before I reenter the Seminary * * The record reflects that the defendant changed his mind, about reentering the Seminary because, on July 12, 1952, he obtained employment teaching in a local private school at a salary of $330 per month and, on August 14, 1952, a month later, he finally left the family home.
Plaintiff insists that the defendant is indebted unto him in the amount of $1,264.16, less $15 paid thereon, accounted for as follows :
“(a) $300.00 borrowed by Mrs. Prats and paid to, or used for the account of the defendant. (Included is $142.32 expended for clothing for defendant.)-
“(b) $103.28 in interest paid on account of said loan by Mrs. Prats.
“(c) $85.88 paid by Mrs. Prats on account of another loan which defendant had made.
“(d) $25.00 sent by wire by plaintiffs to defendant in Washington ($1.86 for the cost thereof).
“(e) $100.00 for a trunk, spring mattress and telephone tolls paid for by plaintiffs at the request, and for the benefit, of defendant, and
“(f) $650.00 for board, lodging, laundry and dry cleaning furnished defendant by plaintiffs.”
Plaintiff, as related hereinabove, asserted that the defendant was indebted unto him in the amount of $1,249.16. The trial court awarded plaintiff the sum of $212.74 and expressed the opinion that “the defendant was in need within the contemplation of LSA-C.C. art. 229 and if not still the help extended by the plaintiffs is presumed to be gratuitous (See Tolley v. Karcher [196 La. 685], 200 So. 4; Muse v. Muse [215 La. 238], 40 So.2d 21; LSA-C.C. art. 1759), but being of the further opinion that this does not apply to the cash items of $100.00 and the Western Union Money Order for $25.00 (plus $1.86 costs) which the defendant admits owing nor to the item of $85.88 principal and interest paid on the note signed by defendant * *
It will be observed from the context of the foregoing opinion that the trial judge predicated his award on the fact that the defendant conceded an indebtedness for the various amounts set forth therein. We are of the opinion that the award founded on the defendant’s admission of indebtedness for these various items is correct, however, an analysis of the record, in our opinion, further discloses that the defendant has likewise conceded that he owes $100 fo'r a trunk, spring mattress, telephone tolls and $142.32 for clothing, since the foregoing amounts were expended or the debt was incurred by virtue of his request, therefore, there exists an implied promise on his part to pay for these various articles and services.
In view of the above conclusion we believe plaintiff is entitled to recover $242.32 of the amounts set forth in items (a) and *208 (b), since the balance claimed therein has not been proved with the certainty that the law requires. The lower court permitted plaintiff to recover the full amount claimed in items (c) and (d) and, in view of what we said hereinabove, we are of the opinion, that he should also recover the full amount set forth in item (e), therefore, there remains for our consideration only the amount claimed for board, lodging, etc. reflected by item (f).
Counsel for plaintiff contend that the only real issue posed for our consideration is with reference to the item of $650 claimed by plaintiff for board, lodging, laundry, etc. Plaintiff, in his endeavor to substantiate this claim, has extracted a statement from the context of a letter addressed by the defendant to his parents on March 17, 1952, wherein he apprised them of the fact that he decided to cease his course of study at the University of Alabama and planned to return to the Seminary to continue his studies for the priesthood. In the body of this letter the defendant remarked “Do not think that you have lost money on this deal. I had to get away where I could be alone and pray. That is the reason for my trip here. I am sure that Our Lord will find me the means to repay you in full before I reenter the Seminary * *
Plaintiff insists that the foregoing statement is a recognition of defendant’s indebtedness for board, lodging, etc. and a promise to pay therefor.
We have quoted the substance of this letter elsewhere in this opinion and a reading of the whole thereof together with the other relevant testimony appearing in the record convinces us that defendant never intended to convey therein an express or implied promise to pay nor did the plaintiff accept it as such. The evidence adduced herein preponderates to the effect that the plaintiff never anticipated charging his son for room and board. The evidence also leaves us with the indelible impression that if some trouble had not developed between the litigants during August of 1952, the nature of which is not revealed by the record, this suit would never have been instituted.
The trial judge expressed the opinion that the defendant was in actual need during the period that food and shelter, etc., was provided by the plaintiff and, in conformity with the provisions of LSA-C.C. Article 229, the defendant was entitled to receive these services from his parents— Lut even if the defendant was not in need the help extended by the plaintiffs is presumed to be gratuitous in the absence of an express or implied promise to pay. Tolley v. Karcher, supra; Muse v. Muse, supra.
We are in accord with the foregoing concept of the law as applied to the facts of this case by the trial court.
The record discloses that the trunk and spring mattress referred to elsewhere herein are in the possession of the plaintiff and, therefore, since we are permitting him to-recover the monetary value of these articles, they should be returned to defendant.
For the reasons assigned the judgment appealed from insofar as it was rendered in favor of Mrs. Jules J. Prats, Sr., is annulled, avoided and reversed, the exception of no right of action is maintained and her suit is now dismissed.
It is further ordered that the judgment appealed from insofar as Mr. Prats is concerned is amended by increasing the amount thereof from $212.74 to $455.06 and ordering plaintiff to return to defendant the trunk and mattress, and, as thus amended, it is affirmed.
Reversed in part.
Amended and affirmed in part.