CULPEPPER, Judge.
This is a proceeding by rule instituted by the plaintiff, James D. Simon, against his divorced wife, Eloise S. Simon, an interdict, represented herein by her curatrix, Mrs. Viola C. Stone, to revoke or in the alternative to reduce a judgment for alimony. From the judgment of the lower court reducing the alimony from $200 to $25 per month, the defendant in rule, Mrs. Eloise S.Simon, has taken this appeal.
The record in this case shows that plaintiff and defendant were married in the City of Alexandria, Louisiana on November 8, 1928 and immediately thereafter established their matrimonial domicile in the City of St. Martinville, Louisiana. Plaintiff and defendant lived together at said matrimonial domicile until about the year 1937 at which *770 time Mrs. Simon became ill. According to the testimony of Mrs. Stone it was shortly after the year 1940 that Mrs. Simon moved permanently to Alexandria where she has since lived in the home of her mother, Mrs. Stone, the curatrix herein. During the year 1954 the plaintiff was elected to the office of Justice of the Supreme Court of the State of Louisiana and was inducted into office on January 1, 1955. On March 18, 1955 a judgment was rendered, read and signed in these proceedings granting Judge Simon a divorce on the grounds of two years separation and ordering him to pay alimony to his former wife, Eloise S. Simon, in the amount of $200 per month. In April of 1955 Judge Simon remarried and since that time has been living in the City of New Orleans with his wife and step-daughter.
It is the first contention of the plaintiff that the many debts and obligations which he has incurred since the divorce make it impossible for him to continue to pay $200 per month alimony to the defendant. The record reflects that shortly after his remarriage plaintiff acquired a new home in New Orleans on which the first mortgage is in the principal amount of $30,000 and is payable in monthly installments of $240 which includes payments on principal, interest, taxes and insurance. There is a second mortgage on this home in the sum of $16,845 but this indebtedness is evidenced by a demand note on which plaintiff has made no payments of principal.
Plaintiff also still owns his home in St. Martinville which is likewise burdened with two mortgages, the first in the principal amount of $18,000 payable in monthly installments of $142.35 and the second mortgage in the sum of $10,000 is also payable on demand. Plaintiff has made no payments of principal on this second mortgage and has simply renewed the note every ninety days by paying $132 in interest.
Plaintiff carries $40,000 of life insurance on which the monthly payments are $312. In addition to these life insurance premiums plaintiff has to pay an annual fire insurance premium on his home in St. Martinville in the sum of $110 and an annual automobile insurance premium in the sum of $165.
Furthermore, plaintiff is obligated on a promissory note held by the American National Bank in the sum- of $3,200 and on which plaintiff makes monthly payments of $100 plus interest. Judge Simon’s federal and state income taxes amount to approximately $3,000 per year. He lists his household living expenses at $250 per month.
Plaintiff’s only income is the salary which he receives as a Justice of the Supreme Court of the State of Louisiana in the sum of $18,000 per year. After income taxes are withheld his average monthly income is approximately $1,300.
From the above resume of plaintiff’s present financial situation it is apparent that his fixed monthly payments and expenses are approximately $1,361 and that he owes open demand notes totaling $27,345 on which he pays no principal. Plaintiff contends that he is therefore financially unable to continue alimony payments of $200 per month out of a salary of $1,500 per month.
Furthermore, it is the contention of plaintiff that since the date of the alimony judgment in question defendant has acquired sufficient means for her maintenance within the meaning of LSA-Civil Code Article 160 and she is therefore no longer entitled to alimony. The defendant’s father, John Walter Stone, died on April 25, 1957 and the record of his succession proceedings, which is filed in evidence in the present case, reflects that the total value of the community estate belonging to the decedent and his surviving spouse, Mrs. Viola C. Stone, the curatrix herein, was $87,744.66. Under the terms of a will left by the decedent, Mrs. Stone was recognized as the owner of an undivided one-half interest in and to the decedent’s portion of the community property and she being the owner of a one-half interest in the community estate in her own right she therefore became the owner of a total interest of three-fourths *771 of the community property. Mrs. Stone was likewise recognized as owning a usu-fruct of the remaining one-fourth of the community estate which was inherited by the defendant herein and her brother, James Carson Stone in the proportion of an undivided one-eight of the whole to each. The total community estate consisted of real estate valued at $61,500 and personal property valued at $26,244.66.
The evidence reveals that from this property, of which Mrs. Stone is the owner of an undivided three-fourths interest and the usufructuary of the remaining one-fourth interest, she receives earnings of from $300 to $400 per month in dividends, interest, etc. In addition she receives from time to time the principal which is paid on short term loans and she has these funds at her disposal. Under these circumstances it is the contention of the plaintiff that Mrs. Stone is well able to maintain her daughter, the defendant, and that she is obligated to do so under the provisions of LSA-Civil Code Article 229 which provides for reciprocal alimentary duties between ascendants and descendants. Plaintiff does not contend that the mother’s duty to maintain her daughter under the provisions of LSA-Civil Code Article 229 primes the duty of the husband to maintain his wife under the provisions of LSA-Civil Code Article 160, this issue having been decided by the Supreme Court in the case of Matheny v. Matheny, 205 La. 869, 18 So.2d 324, 326, where it held as follows:
“Counsel for the defendant argue that it cannot be said that the plaintiff has not sufficient means for her maintenance because under Article 229 of the Revised Civil Code, her mother is under a superior obligation to maintain her needy daughter or descendant and that this legal and moral obligation of the mother ‘primes’ the obligation resting upon a divorced husband under Article 160, R.C.C., to provide a pension or* gratuity for his former wife. The right to sue her mother under Article 229 of the R.C.C. for support does not change the fact that at the time this case was tried she did not have sufficient means for her maintenance. It will be observed that there is nothing contained •in either article which would in the slightest indicate that it was necessary for the divorced wife to exhaust her remedy against her mother under Article 229, R.C.C., before asserting her right to alimony against her divorced husband under Article 160. If this were a proceeding by a daughter in indigent circumstances against her mother for support, the mother with just as much logic might say that she should first exhaust her rerriedy against her divorced husband before proceeding against her. This being so, it is obvious that the plaintiff would be in the dilemma of not being able to obtain relief under either one of the articles.”
However, even though the plaintiff acknowledges that the duty of the mother to provide alimony does not prime that of the husband, nevertheless plaintiff contends that the financial ability of the mother to maintain her daughter must be considered by us as a factor in determining whether or not the daughter has sufficient means for her support within the meaning of LSA-Civil Code Article 160. The principal case relied on by the plaintiff is Stabler v. Stabler, 226 La. 70, 75 So.2d 12, 13 in which the evidence showed that the wife had acquired from her mother through simulated sales without consideration, certain real estate valued at $20,000 but the understanding between the parties was that the transfer of these properties was not to become effective until the death of the aged mother and that until that time the mother was to continue to receive rentals from the property. In its opinion the court summarized the facts as follows:
“Under these facts we cannot say that the plaintiff is without sufficient means for her maintenance. She has no dependents; lives with her aged, mother, in the house acquired from the *772 mother on Wisteria Street; owns her own automobile; and receives $120 per month from the rental properties after making monthly payments on the mortgage. The proof offered in support of her claim that trips to the West are necessary to her health is not convincing.” ■
The Court then held as follows:
“The test by which the Court must be guided in fixing the amount of the alimony or pension in such cases is not what it takes to support the divorced wife in the manner in which she has been accustomed to live, but what will provide her with ‘ “sufficient means for her maintenance.” ’ Fortier v. Gelpi, 195 La. 449, at page 456, 197 So. 138, at page 140; and in the recent case of Smith v. Smith, 217 La. 646, 47 So.2d 32, we said ‘ * * * Article 160 makes no reference to the wife’s income, and takes into consideration only her means of maintenance and whether they are sufficient or not. In other words, under Article 160, the Court is not concerned with the wife’s income as such but only with the means she has, including income, and whether they are sufficient for her maintenance. * * * It becomes necessary, therefore, to consider what is meant by the phrase “sufficient means for her maintenance” * * * Maintenance may be said to include primarily food, shelter and clothing, and certainly property or means amounting to $20,000 ought to provide those necessities very readily. * * * ’ 217 La. at pages 653, 654, 655, 47 So.2d at page 35.”
Counsel for the plaintiff argues strenuously that as shown by the opinion in the Stabler case (and particularly by the foot notes) the wife did not actually own these properties valued at $20,000 nor did she receive the rentals because the evidence showed that the wife had acquired these properties from the mother under simulated sales without consideration with the understanding that they were not to become effective until the mother’s death and that the mother would continue to receive the rentals. Plaintiff argues that under these facts the mother actually owned the property and received the rentals and it is therefore apparent that the Court did consider the financial means of the mother in determining whether or not her daughter should receive alimony from the husband who possessed an estate worth approximately $50,000 and earned a yearly income in excess of $12,000.
We cannot agree with plaintiff’s strained interpretation of the Stabler case. Regardless of the understanding between Mrs. Stabler and her mother as to the effective date of the transfer of the properties and the disposition of the rentals therefrom the Court clearly found in its opinion, as shown by the above quotations therefrom, that Mrs. Stabler was the owner of these properties valued at approximately $20,000 and that she received rentals therefrom in the sum of $120 per month and she therefore had sufficient means for her maintenance. We do not consider the Stabler case as authority for the proposition that the husband will be excused from paying alimony to his wife where he can show that the mother has adequate financial means to do so.
While it appears that in the Stabler case the court may have considered the fact that the wife was living with her mother in a house acquired from the mother, the real basis of the decision is that the wife owned assets worth $20,000, which the court found she could use as “means for her maintenance”, under LSA-C.C. 160.
Plaintiff has also cited Tolley v. Karcher, 196 La. 685, 200 So. 4, 8 in which our Supreme Court had occasion to interpret Civil Code Article 229 where plaintiff sued her son and her mother for alimony. The Court ordered the married son who was earning approximately $100 per month, to pay $2.50 per week alimony to his destitute mother and it likewise awarded plaintiff *773 alimony in the sum of $10 per week from her mother who received a rental of $174 a month from the community estate left by her husband and a rental of $58 a month from her separate property.
Although the Tolley case applies Civil Code 229 by requiring the mother to pay alimony to her daughter we do not believe that it is relevant to the issues in the present case, which is concerned with the obligation of the husband to maintain his wife.
Plaintiff also contends that defendant has means for her maintenance by reason of her naked ownership of an undivided one-eighth interest in an estate which is valued at approximately $87,000 and yields revenue of from $300 to $400 per month. The undivided one-eighth interest which is owned by Mrs. Simon is subject to a usufruct in favor of Mrs. Stone and cannot therefore be considered as means owned by Mrs. Simon which is available for her maintenance. This issue was decided by our Supreme Court in the case of Tolley v. Karcher, supra, in which the Court held as follows:
“Defendants attempted to prove that plaintiff is not destitute because she has a one-sixth interest in the naked ownership of certain real estate in the City of New Orleans, inherited from her father. They likewise sought to show that plaintiff had declined an offer of $2,000 for this interest. In the first place, plaintiff is not compelled to sacrifice her interest. In the second place, she was unable either to sell or mortgage her interest in property of which she did not have the use and enjoyment. Had she had the usufruct there might have been some merit in defendant’s contention.”
The evidence shows that the many debts, obligations and expenses of plaintiff as listed above were incurred almost entirely after he had been ordered by the Court in March, 1955 to pay alimony to defendant in the sum of $200 per month. The defendant argues that plaintiff, being fully aware of his alimony obligation, should have managed his financial affairs so as to provide therefor. Defendant argues persuasively that the present financial difficulties of plaintiff are not the result of any misfortunes beyond his control but are rather the result of his own voluntary extravagance and bad financial management, and he therefore cannot urge his present inability to pay as a defense to this alimony obligation. For instance, defendant argues it is very questionable that plaintiff should have obligated himself to the extent of $46,845 to acquire a home in New Orleans and at the same time maintain a home in St. Martinville on which he has a mortgage of $18,000 and must make monthly payments of $142.35 plus taxes and insurance. It is also questionable that the plaintiff after his remarriage should have taken out $40,-000 in life insurance on which the premiums are $312 per month. Viewing the evidence as a whole, we are of the opinion that plaintiff’s change in financial circumstances since the date of the alimony judgment is entirely the result of his own voluntary acts, greatly increasing the fixed charges against his income for purposes in the nature of luxuries insofar as affording a justification for holding that his economic ability had been decreased to pay alimony to his first wife.
On this appeal plaintiff asks for an affirmance of the judgment of the lower court reducing the alimony to $25 per month and defendant asks that the judgment of the lower court be reversed and that the alimony remain at $200 per month. For the reasons hereinabove set forth we have already concluded that plaintiff has failed to show a change in his ability to pay which would justify a reduction. As to the needs of the defendant the evidence shows that she is an interdict who lives in the home of her mother, Mrs. Stone. The method used by Mrs. Stone to compute the living expenses of the defendant was to first obtain the total of the fixed monthly living *774 expenses and then attribute one-half of this total to defendant. The total monthly living expenses for both Mrs. Stone and Mrs. Simon which we find justified are as follows:
Food .. $60.00
Laundry, Maid Service & Dry Cleaning _$30.00
Utilities -¿-$15.00
Drugs & Cosmetics-25.00
Clothing-25.00
Automobile Maintenance- 15.00
Total_$170.00
The one-half of the above listed fixed monthly living expenses which is attributable to Mrs. Simon is $85.
In addition Mrs. Stone testified as to the following monthly expenses which are attributable solely to Mrs. Simon:
Nurses or sitters to stay with Mrs. Simon in Mrs. Stone’s absence — $20.00
Dr. Murrell’s Clinic-20.00
Total-$40.00
Mrs. Stone also testified that the defendant needed $35 per month to pay her attorney to collect the alimony due from plaintiff hut we do not find that this is a justified or proven item of necessary expense for maintenance.
In addition to the above items, Mrs. Stone contends that the defendant is entitled to receive alimony to pay one-half of the monthly rental value of the home which is owned by Mrs. Stone and occupied by them. Mrs. Stone placed the monthly rental value of the home at $150 and contends that defendant should receive from $50 to $75 per month in alimony to pay Mrs. Stone rent. Under the circumstances, we do not feel it has been shown that the defendant has need of any sum with which to pay rent for shelter and it is our opinion that therefore such an item cannot be allowed under the present situation.
Mrs. Stone has claimed other items of expense for defendant but we feel that in view of the interpretation of “maintenance” as set forth by our Supreme Court in Stabler v. Stabler, supra, and all of the circumstances of this case, an award of $150 per month alimony would do substantial justice.
For the reasons hereinabove set forth the judgment of the lower court is amended so as to order the plaintiff, James D. Simon, to pay to the defendant interdict, Eloise Stone Simon, through her curatrix, Mrs. Viola C. Stone, alimony in the sum of $150 per month beginning as of September 11, 1958. (The date agreed to by stipulation of counsel in the record). In all other respects the judgment of the lower court is affirmed. All costs of this appeal are assessed against the plaintiff in rule.
Amended and affirmed.
On Application for Rehearing.
Rehearing denied, en Banc.