(70 South. 812)

No. 20218.

FULCO et ux. v. SHREVEPORT TRACTION CO.

(Jan. 10, 1916. Rehearing Denied Feb. 7, 1916.)

*(Syllabus by the Court.)*

STREET RAILROADS ⬡═95—NEGLIGENCE—INJURY TO CHILD.

A motorman, operating an electric car, and seeing a child under four years of age running ahead of the car and in dangerous proximity to the track, is guilty of gross negligence · if he fails to maintain such slow speed and keep his car at such distance from the child as to be able to avoid a collision in case the child attempts to cross the track.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 179, 180, 202; Dec. Dig. ⬡═95.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Carmelo Fulco and wife against the Shreveport Traction Company. From judgment for plaintiffs, defendant appeals. Affirmed.

Wise, Randolph & Rendall, of Shreveport (A. B. Freyer, of Shreveport, of counsel), for appellant. Murff & Thurber, of Shreveport, for appellees.

O'NIELL, J. This is a suit for $10,000 damages for the killing of the plaintiffs' child by a street car of the defendant company. The jury rendered a verdict in favor of the plaintiffs for $3,700. The defendant has appealed, and the plaintiffs ask that the amount of the judgment be increased to $10,000, or at least to $5,000.

The victim of the accident was a boy only three years and ten months old, who had wandered out alone from his father's store into the street and was run over by the electric car.

Several persons who witnessed the accident testified that the car was going very fast, and that the motorman did not reduce his speed or apply the brake until the child was struck. They say that the motorman's attention was directed toward a crowd of people and vehicles congregated at a railroad station which the street car was approaching, and that he did not see the child running ahead of the car on the other side of the track. Several of the witnesses testified that one of them called to the motorman and tried to attract his attention to the child near the

track, but that the motorman did not look in the direction of the child until it was too late to avoid the accident.

The motorman testified that he saw the child when it ran into the street to a point about 2 feet from the track. He said he was then about 80 feet away, was traveling at the rate of only about 6 miles an hour, and that the child had ample time to cross the track. The motorman admitted that he realized the dangerous position of the child and said that he immediately threw off the motive power, applied the brake, reduced his speed to about 4 miles an hour, and sounded his gong until he attracted the child's attention. The child had then run along the track, in the direction in which the car was traveling, a distance of 40 or 50 feet to a point about 3 feet from the track. The motorman then concluded that the child would go onto the sidewalk, and he says he "began to feed the car up, put it up one or two points," and allowed it to proceed slowly for a distance of about 80 feet further while the child ran ahead of the car for a distance of about 40 feet further. The motorman says that the child was looking across the track as he ran, as if he wanted to cross in front of the car but was afraid to attempt it. When the car had approached to within 10 feet from the child—possibly within 6 feet, as the motorman admits—the child was within 7 feet, possibly only 3 feet, from the track, and suddenly ran so close that the corner or cone post of the car struck him. The conductor immediately applied the emergency brake, but the car continued for a distance of about 50 feet, dragging the child and mangling him under the wheels. He was picked up about 10 feet behind the car when it stopped. He died in less than an hour. The accident happened in daylight, and there was nothing to obstruct the motorman's view of the child from the time he ran into the street until he was struck by the car. During that time, according to the motorman's statement, the car traveled about 160 feet, while the child covered a distance of about 80 feet, running ahead of the car and in dangerous proximity to the track.

The motorman's testimony is very uncertain and unsatisfactory as to distances, and we are inclined to believe, from all of the testimony in the case, that his car was traveling faster than 4 miles an hour, and that the child did not run as far ahead of the car as the motorman estimates. However, if the car was traveling as slowly as the motorman says, it covered the distance of about 160 feet, from the place where he first reduced his speed to the place where he struck the child, in about 27 seconds.

Accepting the motorman's account of the accident as correct, we conclude that he was guilty of gross negligence in running his car so close to the child, who was too young to exercise any discretion, that the car could not be stopped in time to avoid killing the child when he attempted, what the motorman saw he was likely to attempt, to run across the track in front of the car. Under the circumstances related by the motorman, it was his duty to maintain such a slow speed, and keep his car at such a distance from the child, as to be sure he could avoid a collision if the child ran towards the track.

As the motorman had the last clear chance to avoid the accident, there is no merit in the defendant's plea that the plaintiffs were guilty of contributory negligence in permitting their child to run out upon the street alone. As a matter of fact, the father had lost sight of the child in his store only a few minutes before the accident; and, if there was any negligence on his part, it was indeed slight.

The assessment of damages arising ex delicto is a matter so largely within the province and discretion of the jury that we have concluded not to increase the award in this case.

The judgment appealed from is affirmed.