168 So. 481

## GUILLORY v. HORECKY et al.

No. 33813.

April 27, 1936.

Lewis & Lewis, of Opelousas, for relator.

Carmouche & Carmouche, of Crowley, for respondents.

FOURNET, Justice.

Plaintiff instituted this suit against John Horecky and his insurer, Maryland Casualty Company, for $10,000 damages for the death of her eleven year old daughter whom she alleged was struck and killed on the 7th day of April, 1933, by the truck and trailer of defendant, John Horecky, as the result of the negligence of defendant's employee, Roy Malbrough, who was operating the truck at the time within the scope and course of his employment, and that John Horecky held a contract with the Maryland Casualty Company insuring him against liability arising from the negligent operation of the truck and trailer.

Defendants first filed exceptions of no cause or right of action, which were apparently abandoned when plaintiff filed an amended and supplemental petition. Defendants then filed a joint answer denying liability.

The trial judge rendered judgment, after hearing the evidence, rejecting relator's demands and dismissing her suit, which was affirmed by the Court of Appeal, First Circuit, 162 So. 89, 92, and on rehearing, two judges adhered to the original opinion and one dissented, 165 So. 159. The matter is now before this court for review on writs granted by us.

The basis of the defense is: First, that Roy Malbrough, the driver of the truck, was not employed by John Horecky as a chauffeur, and that in driving the truck at the time in question, he was doing so without authority from and against the orders of his employer; and, second, that the injury sustained by plaintiff's daughter was an unavoidable accident in so far as defendants are concerned, being the result of the child's negligence and carelessness in running against the trailer.

On the question of the driver's employment by Horecky and his authority to use the truck, the Court of Appeal said: "We find that Roy Malbrough, in driving this truck, at the time in question, was driving with the authority and in the service of John Horecky." A careful review of the voluminous testimony on that question convinces us of the correctness of the court's finding.

No plea of contributory negligence was filed by the defendants in the lower court, and, therefore, the main question for our consideration is whether plaintiff's contention is correct, i. e., that a proximate cause of the accident was the negligence of the driver, or defendant's contention, i. e., that the sole and proximate cause of the accident was the fault of plaintiff's child, and, therefore, the accident was unavoidable on the part of the driver of the truck.

The evidence shows that the defendant Horecky operates a wholesale grocery in the town of Church Point, and in connection therewith, for the purpose of delivering merchandise, operates eleven trucks with trailers; that Roy Malbrough was employed by defendant as a warehouse workman but was often permitted to substitute for other drivers to make deliveries in and out of Church Point, and, by acquiescence of his employer, at least, to use the truck to go to his noonday meals. Malbrough was a native of the town of

Church Point and lived in the vicinity of two schools, which are located near the scene of the accident. The accident occurred about 12:15 o'clock noon on a bright clear day on the main street of the outskirts of the town, when the driver was on his way home for his noonday meal. The street is straight, 26 feet wide, unobstructed and graveled from ditch to ditch. The driver was well acquainted with the fact that it was customary for the children to walk on and along the edge of the highway to go home for their noonday lunch at about the time he went home in the truck for the same purpose. He admitted having seen the children more than a block away, walking towards him on his right side on the road, about 2½ or 3 feet from the ditch, and at that time, he sounded his horn. Moreover, he admitted that even though he saw the children playing on the road, nevertheless, he continued on his right side of the road within five feet of the edge of the ditch until the front part of the truck was practically even with the children, at which time he says that plaintiff's daughter tagged one of her companions and ran towards the truck, and in order to avoid striking her, he suddenly turned the truck to the left, but in spite of his efforts to avoid her, the child ran into and struck her head on the rear right side of the trailer attached to the truck.

In the case of Danna v. City of Monroe, 129 La. 138, 55 So. 741, it was held, as expressed in the syllabus of the case:

*"When the motorman and conductor of a street car see a child 20 months old in the street* facing or approaching the track *and in dangerous proximity thereto, the car should be brought, and kept, under control, until there no longer exists a possibility that the child will get on the track and be run over; and by bringing and keeping the car under control is meant that the motorman should cut off the power, reduce the speed, and keep the brake chain wound up, so that the car may be stopped instantly or within one or two feet."* (Italics ours.)

In the case of Fulco v. Shreveport Traction Co., 138 La. 809, 70 So. 812, the court said:

*"A motorman, operating an electric car, and seeing a child* under four years of age *running ahead of the car and in dangerous proximity to the track, is guilty of gross negligence if he fails to maintain such slow speed and keep his car at such distance from the child as to be able to avoid a collision in case the child attempts to cross the track."* (Italics ours.)

In the case of Albert v. Munch, 141 La. 686, 696, 75 So. 513, 515, L.R.A.1918A, 240, it was held that the chauffeur of an automobile, which ran over and killed a ten year old boy, was negligent because he saw the boy in the street in a little soap box wagon, affixed to an ice wagon by a rope, from 90 to 150 feet before he reached him, and failed to prevent the accident, the court saying: "It is admitted that both he [the defendant] and the chauffeur saw the ice wagon, with the soap box wagon, containing the two boys, trailing behind it, in ample time (whether at a distance of 150 or of 90 feet) to have enabled

them to have fully appreciated the situation and have taken the precautions neces-. sary to avoid an accident. There is no suggestion in the record that there was any other vehicle on the street that interfered or threatened to interfere with them, *and all that they had to consider was how not to run over the boys.* The first precaution that should have been taken was to give warning of their approach. * * * *The next precaution should have been to slow down the automobile, so that in no event or situation that was conceivable to its occupants could they kill the boys."* (Italics ours.)

In the course of the opinion in that case, the court said: "the ice wagon and the little wagon were always in plain sight of the chauffeur, who could see that the little wagon was a rickety affair, managed by two little boys, and was hitched to the ice wagon, and *common prudence should have suggested that it was a dangerous thing,* for the boys, for him to blow his horn, compel the ice wagon to turn, and attempt, at practically the same moment, *to pass them within 3 feet at the rate of 10 miles an hour; nor was there any reason for his doing so, since he had a clear space of 10 or 12 feet on the roadway to his left, which was open to him."* (Italics ours.)

■ We think the Court of Appeal in its original opinion was correct in its statement that "The evidence shows that the children were playing tag, and the truck driver saw them playing and running in his direction and looking behind them as he approached. The fact that his

truck was drawing a trailer called for additional care. The situation called at once, on his part, for great care. He should have gotten down to very moderate speed and held his truck well in hand, ready to stop or swerve as might be necessary to avoid the result of an impulsive act on the part of the children."

There was some dispute as to the estimated rate of speed at which the truck was moving at the time of the accident. The driver said that he was going ten miles an hour; one witness estimated the speed at between ten and fifteen miles an hour; another at fifteen or twenty miles an hour, and still another from twenty to twenty-five miles an hour. On that subject the Court of Appeal stated: "It is our conclusion it is likely to have been driven at the time close to twenty or twenty-five miles an hour." If the driver was going only ten miles an hour as he testified, it appears to us that he should have stopped his truck within a few feet and avoided the accident, since Roy Horecky, defendant's son, who was actively engaged in handling his father's business, testified that the brakes on the trucks were always in excellent condition, and while going at the rate of ten miles the truck could be practically stopped in its own tracks; at fifteen miles an hour within five feet; at twenty miles an hour within twelve to fifteen feet; and at twenty-five to thirty miles an hour, within twenty-five feet. The truck and trailer together in this case measure over forty feet, and the child was struck by the extreme rear right side of the trailer.

We think that the truck driver either failed to apply the brakes, which he should have done, trusting that he could avoid striking the child by swerving to the left, or was going faster than is shown by his and the testimony of plaintiff's witnesses. However, in the instant case we do not think it was material as to what rate of speed the truck was moving. Suffice it to say that the driver did not operate his vehicle, after having seen the children, with such prudence and care and under such control that he could have instantly stopped the truck and avoided the accident. However, the fact that the driver continued to operate the truck within five feet from the edge of the road after having seen the children on the same side of the road within two or three feet from the edge of the ditch, at the rate of twenty to twenty-five miles per hour, as the Court of Appeal found, was gross negligence and a wanton disregard for the safety of the children.

In other words, taking the facts as found by the Court of Appeal, it is our opinion that under the law the defendant is liable, since the driver was guilty of negligence which contributed to the accident and the child was of such immature age and mentality as to be incapable of contributory negligence, which was not even pleaded.

Having concluded that the plaintiff is entitled to recover for the death of her child, and as it appears from the record that the child was eleven years old, of small stature and of childish mentality, as she was only in the first grade at school,

that she assisted her mother in her work as a washwoman, and that the child suffered from the time she was struck until she died, about six hours later, we think an award of $2,500 is fair and reasonable. There are no claims for medical expenses and funeral bill, as defendant paid those items.

For the reasons assigned, the judgments of the Court of Appeal, First Circuit, and the lower court are set aside and annulled, and it is hereby ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Olive Guillory, and against the defendants, John Horecky and the Maryland Casualty Company, in solido, for the sum of $2,500, together with legal interest from judicial demand, until paid, and all costs of court.

ODOM, J., dissents.

O'NIELL, C. J., absent.