### CIMO v. KARSTENDIEK.

No. 14999.

Court of Appeal of Louisiana. Orleans.

April 5, 1937.

Gordon Boswell, of New Orleans, for appellant.

E. Howard McCaleb and Robert G. Hughes, both of New Orleans, for appellee.

CHARLES J. RIVET, Judge ad hoc.

This is an appeal from the verdict of a jury awarding damages to the plaintiff and to his minor son, for the actual expenses of the former and physical injuries of the latter, attributed to the defendant's negligent operation of her automobile.

■ An application for a new trial, after the verdict of a jury, was refused by the district judge with this comment:

"New trial refused although I do not agree with the verdict. It seems to me that defendant had no opportunity to avoid the accident when the little boy dashed in front of her. I feel further that it might be an unnecessary waste of time to have another jury try it. Both attorneys have agreed to have the motion for the new trial overruled provided I made these few explanatory remarks."

We cannot construe these remarks as having any legal effect whatsoever. If they were intended to express the view that the verdict was contrary to the law and the evidence, it was the duty of the judge to order a new trial. Dahlberg v. Shreveport Traction Company, 141 La. 96, 74 So. 707. The law allows no other course.

The fact that both attorneys agreed to the overruling of the motion does not alter the situation. If we were to give effect to the remarks of the trial judge, we would invest him with authority to substitute his views for the verdict of the jury, whereas the law gives him the right to set the verdict aside only for the purpose of granting a new trial, and his powers in that regard are limited. Act No. 51 of 1908.

■ We cannot conceive the situation to be that counsel for plaintiff intended to abandon the verdict in favor of his client and to accept in lieu thereof an adverse judgment by the judge. We must rule that defendant waived her application for a new trial and chose to have the matter reviewed by an appeal from the jury's verdict. Otherwise we would have to introduce a new proceeding in our practice, a function reserved to another branch of the government.

■ The familiar and approved rule directs us not to disturb a jury's findings unless shown by the appellant to be clearly contrary to the law and the evidence.

Defendant's own testimony establishes the following:

At about 10 o'clock on a Saturday morning she was driving her automobile along the lower driveway of Ursuline avenue, which is about 18 feet wide, going in the direction of Bayou St. John. Just as she passed the intersection of White street, she saw a group of children, a little over a half a block ahead of her, standing on the neutral ground "as though they were statues." There was nothing to obstruct her view, but she did not see the plaintiff's son, who was later injured, as he was standing behind a larger boy. She was driving at approximately 25 miles an hour at about 4 or 5 feet from the neutral ground. When she was about 25 feet from the group, a sweater was thrown into the roadway, by one of the boys, in the direction of her approaching automo-

bile. It landed about 4 or 5 feet from the neutral ground. The Cimo boy, aged about eleven years, made a wild dash after the sweater. She saw the boy run from a position right near the car track (in the middle of the neutral ground), which has a width of about 12 feet, into the street, and as he was just about to come over the curb (of the neutral ground) he put up his arm as though to ward off impending danger and kept it up until he was struck. He did not make any attempt to pick up the sweater, but attempted to dash across the street. She swerved her car to the right, or away from the neutral ground as soon as she saw him dash into the street, but he ran into her left front light and bumper. The bumper picked him up and threw him on the sidewalk with his leg extended in the street. She then swerved from her course, so as not to run into the palm trees on the sidewalk for fear that she and her mother, who was a passenger in her automobile, would be killed. It was then that she ran over the boy's leg. She stated that as soon as she saw the boy she tried to slack up a bit and thinks that she reduced her speed to about 18 miles an hour. She testified that she had remarkable brakes on her car. She does not know whether they were two-wheel brakes or four-wheel brakes, but, "if you are riding and you want to stop they give you a jolt and send you almost out when you want to stop." She said that she had no idea of distance, but thought she could stop her car when traveling 20 miles an hour in not over 20 feet.

When she finally came to a stop, she was at an oblique angle about 5 or 6 feet from the intersection of N. Dupre street, with her left front wheel at about 3 or 4 feet from the neutral ground. It, therefore, appears that after first striking the boy her automobile traveled at least 50 feet before coming to a stop.

At the time of the accident defendant's mother, an elderly woman, semiinvalid, was seated on the front seat of the automobile. She was being brought back home after having received a baking treatment from a doctor. She was unable to appear in court, but made the following statement, which was admitted in evidence by consent: "I was in considerable pain and was not paying any attention to the speed or operation of the car. I know nothing whatever about the accident, except the boy was injured, but for me to attempt to say that I saw the accident or estimate speed would be a physical impossibility. Neither can I estimate the number of feet the car went after the accident." Defendant's failure to promptly use her brakes, which, according to her testimony, would have resulted in a severe jolt, was probably out of consideration for her maternal passenger.

We need not recite the testimony of any other witness as we are of the opinion that the jury could have rested its verdict on defendant's own testimony.

The generally accepted rule of law applicable to cases such as this is that the operator of an automobile must increase his exertions in order to avoid danger to children whom he may see on or near the highway. More than ordinary care is required in such cases. An automobile driver on approaching children playing by the roadside, or at the edge of the road, must do more than merely drive slowly. He must have his car under control and turn as far away from them as is practicable under the circumstances. He must so manage his car that the children need not, to avoid injury, exercise the care that is expected of adults. See 2 Blashfield's Ency. of Automobile Law (Permanent Edition) page 541; Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L.R.A.(N.S.) 677; Albert v. Munch, 141 La. 686, 75 So. 513, L.R.A.1918A, 240; Jacoby v. Gallaher, 10 La.App. 42, 120 So. 888; Guillory v. Horecky, 185 La. 21, 168 So. 481.

In the last-cited case the Supreme Court of this state condemned as gross negligence and a wanton disregard for the safety of children the action of a truck driver who, after having seen children on the roadway about a block distant, did not operate his truck with such prudence and care and under such control that he could have instantly stopped it and avoided an accident. "The fact," said the court, "that the driver continued to operate the truck within five feet from the edge of the road after having seen the children on the same side of the road within two or three feet from the edge of the ditch, at the rate of twenty to twenty-five miles per hour, * * * was gross negligence and a wanton disregard for the safety of the children."

The defendant in the instant case, as we conclude from her own testimony, was guilty of exactly the same acts thus denounced by the Supreme Court.

The facts of this case do not fall within the doctrine of the sudden emergence of a

child from behind an obstacle. Hence, we do not find the cases cited by appellant applicable.

In the instant case the defendant had ample time to slow down, to take a course further removed from the neutral ground, and to have her car under such control that she could have instantly stopped. She did none of these; she gave no warning; she proceeded along mindless of any emergency which might arise, and which it was her duty to guard against, from the presence of the children on the neutral ground.

We fail to find wherein the jury's verdict is contrary to the law and the evidence.

The jury awarded $2,000 for the use and benefit of the child who suffered a fracture of the upper end of the right humerus, a fracture of the left femur and other injuries; and $1,484.73 to the parent for medical and other expenses.

No question is raised as to the quantum of the award.

The judgment appealed from is, therefore, affirmed. The appellant to pay all costs.

Affirmed.

McCALEB, J., recused.