197 So.2d 107 (1967)
Bennie G. TATE, Sr., Individually and as Administrator of his Minor Son, Bennie G. Tate, Jr., Plaintiff-Appellant,
v.
Barney W. HILL, Jr. and Connecticut Fire Insurance Company, Defendants-Appellee.
No. 6877.
Court of Appeal of Louisiana, First Circuit.
March 13, 1967.
Rehearing Denied April 17, 1967.
Writ Refused June 9, 1967.
*108 Alex Wall, of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellant.
Maurice J. Wilson, of Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff, Bennie G. Tate, Sr. individually and as administrator of the estate of his twelve year old son, Bennie G. Tate, Jr., instituted this suit to recover expenses incurred by him and for personal injuries sustained by his minor son growing out of a pedestrian-automobile accident which occurred on March 6, 1965. Defendants are Barney W. Hill, Jr., owner and operator of a 1956 Studebaker automobile and Connecticut Fire Insurance Company, public liability insurer of petitioner and responsible to petitioner by virtue of the uninsured motorists clause of its policy in the event of liability on the part of defendant, Hill. Judgment was rendered in the district court finding the minor son guilty of negligence, absolving Hill of negligence and rejecting plaintiff's plea of last clear chance. Plaintiff appeals from this adverse judgment. Only defendant, Connecticut Fire Insurance Company, has answered the appeal and urges the correctness of the trial judge's decision.
Plaintiff resides on the south side of U. S. Highway 190 (Baton Rouge-Hammond) approximately 4½ miles west of Hammond. An older son, Emmett Tate, resides on the north side of said Highway 190 and directly in front of plaintiff. Young Bennie Tate was going from the Emmett Tate residence to his father's home and was running in a southerly direction across Highway 190 when he was struck by Hill's automobile. The point of impact was 3 feet south of the center line of Highway 190 or in the lane for eastbound traffic.
Highway 190 at this point is straight and level for some distance. It is a standard hard surfaced highway measuring 24 feet in width, 12 feet for each direction of traffic. The width of the shoulder is not indicated in the record. Paralleling the highway and the shoulder on the north is a ditch approximately 2 feet in depth. The width of the ditch is not given; however, it is conceded that the depth of the ditch did not obstruct or hinder the view of drivers traveling in either direction along the highway of persons walking in or across the ditch. The accident occurred around *109 5:30 P.M., visibility was good, the weather was clear, and the road dry.
Shortly before the accident young Tate was with Emmett Tate at the latter's residence and was watching television. Emmett left him there with instructions to turn the set off when he had concluded and return to his father's home for supper. All the lad recalls of the events leading up to the accident was turning the set off and taking several steps towards the door.
Defendant Hill testified that he was traveling eastward on U. S. Highway 190 at approximately 55 miles per hour. He first observed the boy from a distance of 300 feet. The lad was running in a southerly direction and at a slight angle in his direction. When Hill had narrowed the distance to 150 or 200 feet young Tate had come up to the ditch, across the shoulder and stepped onto the road. When the boy was about in the center of the westbound traffic lane he hesitated and then darted in front of his automobile. He applied his brakes when he was about 100 feet away but could not avoid hitting the boy. Hill further testified that he had previously observed a pickup truck traveling towards him at some distance at the same time he observed the movements of young Tate. He explained that when it was evident to him that the boy was going to cross his path all he could do was to apply his brakes, "* * * if I had went to the right if he had kept running I would have hit him on the shoulder, and if I went on down in the ditch it would have turned over and I might have turned over on him and it would have been both of us, and if I had went to the left I would have hit that truck head on." The left front of his car struck the youth, knocking him up and over the vehicle and a distance of some 60 feet. From the point of impact, Hill's vehicle skidded a distance of 120 feet and came to rest on the south shoulder of the highway facing west and even with the spot where the pickup truck had come to a stop.
The driver of the pickup truck was one Fleet Blackwell, Jr., whose testimony was taken by deposition and filed in the record. This witness stated that he was traveling westward on U. S. Highway 190 between 60 and 65 miles per hour and when he was 100 to 150 yards from the point of impact he saw young Tate cross the ditch on the north side of the highway, run up on the shoulder and onto the highway, where he momentarily hesitated and then made another start and ran into the path of Hill's oncoming car. He stated that he began to "brake" his vehicle to where he could stop when he observed the boy cross the ditch and come onto the shoulder, and had completely stopped by the time young Tate's body had fallen to the pavement and before Hill's vehicle came to rest beside him. He placed his position 125 feet from the point of impact, 60 to 75 feet from young Tate's body, and even with Hill's vehicle. He was asked if he had observed defendant prior to the accident and stated, "I don't remember seeing that car at all until it hit the boy, I had my eye on that kid in the highway." The witness further stated that Hill's skid marks commenced at the point of impact and continued eastward "up to where his car actually left the pavement and started into the ditch * * *" He further stated that young Tate looked both ways when he was in the act of crossing the highway and had momentarily paused. This witness placed the point of impact at 3 feet south of the center parallel line of the highway.
Concerning the action of young Tate while in the middle of the westbound lane of traffic, Hill stated "then he hesitated". The witness Blackwell stated that the boy "momentarily hesitated" and also "a pause more or less". However, the evidence shows that the lad was in fact running from the time he was observed in the ditch on the north side of the highway to the moment of impact. Probably a better description of the action of this youth at this moment was that he "broke his stride".
Trooper C. E. Chandler, with the Louisiana State Police arrived at the scene of the *110 accident shortly after young Tate was taken by ambulance to the Baton Rouge General Hospital in Baton Rouge. He testified that there was no abrupt change in the skid marks left by Hill's automobile nor was there any debris on the road itself and accordingly he could not determine the point of impact. He did, however, step off 120 feet of skid marks left by Hill's vehicle. These skid marks were all located in Hill's or the eastbound lane of traffic. They commenced at a point near the driveway leading into the Sr. Tate's residence. The trooper further testified that he observed no defects in the mechanical condition of the Hill vehicle. His comment was there was sufficient skid marks to indicate that the defendant's vehicle's brakes were functioning properly.
Considering the above facts which in our opinion are not in basic conflict, the trial judge concluded in his written reasons for judgment that "the evidence does not justify the conclusion that Hill failed to operate his automobile in an ordinarily careful and prudent manner, nor does the evidence show that Hill could have reasonably done anything under the circumstances to have prevented the accident, and the doctrine of last clear chance does not in the opinion of the court, have application here". In this conclusion we respectfully disagree and must conclude that the trial judge committed manifest error, for in our opinion there was indicated to Hill a perilous situation involving young Tate which warranted prudent response on Hill's part long before he applied his brakes. On this point we elaborate further.
There can be no question but that young Tate, twelve years of age, and being of normal intelligence can be guilty of negligence and/or contributory negligence, both of which would ordinarily preclude recovery for damages of the type herein sought. Hargus v. New Orleans Public Service, 9 La.App. 117, 118 So. 847; Lawrence v. Core, La.App., 132 So.2d 82. However, in determining negligence and/or contributory negligence of a child, the action of the child must be judged by his maturity and capacity to evaluate circumstances. The degree of caution expected of a twelve year old boy varies with the circumstances of each given case. Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269, Cusimano v. City of New Orleans, 123 La. 565, 49 So. 195.
It is also quite evident that the action of young Tate in attempting to traverse U. S. Highway 190, acknowledged to be a very busy and heavily traveled highway, under the circumstances here shown, was a negligent act of serious import. This negligence would bar recovery by the plaintiff herein individually to recover expenses and for the use and benefit of the minor for pain and suffering sustained by the latter, unless the facts and circumstances concerning this accident warrant the application of the doctrine of last clear chance or discovered peril.
The doctrine of last clear chance or discovered peril has been the subject of considerable litigation and the jurisprudence of this state is now well settled to the effect that to warrant its application, plaintiff must discharge the burden of establishing three basic factors by a preponderance of evidence. These factors were stated by us in Jones v. Dozier, La.App., 160 So.2d 395, at page 398, as follows:
"First plaintiff must establish that he was in a position of peril of which he was unaware or from which he was unable to extricate himself. Secondly, plaintiff must show that defendant was in a position to discover plaintiff's peril upon the exercise of reasonable care, caution and observation. Finally, plaintiff must establish that when defendant discovered plaintiff's peril, defendant was possessed of a reasonable opportunity to avoid the accident. McCallum v. Adkerson, La. App., 126 So.2d 835; Whitner v. Scott, La.App., 116 So.2d 180; Newton v. Pacillo, La.App., 111 So.2d 895." *111 In applying this formula to the facts in the instant case, we must also consider the fact that the pedestrian here involved is a youth of twelve years of age, which of necessity brings into application certain well established principles concerning the duty of a motorist traveling along a thoroughfare or highway where children are known or observed to be in the vicinity. Guillory v. Horecky et al., 185 La. 21, 168 So. 481; Albert v. Munch, 141 La. 686, 75 So. 513, L.R.A.1918A; Haywood v. Fidelity Mutual Insurance Co. of Indianapolis, La.App., 47 So.2d 59; Stamps v. Henderson, La.App., 25 So.2d 305; Ates v. State Farm Mutual Automobile Ins. Co., La.App., 191 So.2d 332; Biggs v. Verbois, La.App., 151 So.2d 172. For cases recognizing and reaffirming the high duty of care required of a motorist observing children in the vicinity but discharging the defendant of liability because of sudden action on the part of the children preventing the defendant from taking sufficient steps to avoid an accident see Cormier v. Sinegal, 180 So.2d 567; Jenkins v. Firemen's Insurance Company, Newark, N. J., La.App., 83 So.2d 494; Rainwater v. Boatright, La.App., 61 So.2d 212.
In Guillory v. Horecky, supra, involving fatal injuries to an 11 year old girl, defendant admitted observing the child and others approaching in his direction about 2½ or 3 feet from a ditch which paralleled his side of the road. Defendant continued on, well within the legal speed limit, but without varying his speed and within 5 feet of the ditch. In reversing the decisions of the district court and the Court of Appeal and holding for the plaintiff, the Supreme Court stated: (168 So. p. 483)
"The evidence shows that the children were playing tag, and the truck driver saw them playing and running in his direction and looking behind them as he approached. The fact that his truck was drawing a trailer called for additional care. The situation called at once, on his part, for great care. He should have gotten down to very moderate speed and held his truck well in hand, ready to stop or swerve as might be necessary to avoid the result of an impulsive act on the part of the children. * * * However, in the instant case we do not think it was material as to what rate of speed the truck was moving. Suffice it to say that the driver did not operate his vehicle, after having seen the children, with such prudence and care and under such control that he could have instantly stopped the truck and avoided the accident." (Emphasis ours)
In Albert v. Munch, supra, suit was brought for the death of a boy 10 years of age, who with a companion 12 years of age, was trailing in a soap box wagon behind an ice wagon on a city street in New Orleans. They were first observed from a distance of 90 feet. The motorist in attempting to pass the ice wagon sounded his horn. The ice wagon pulled to its right, while passing the ice wagon defendant's vehicle ran over the youth. In reversing the decision of the district court and holding for the plaintiff, the Supreme Court said: (75 So. p. 516)
"From which it would appear that, as the little wagon did not move with the ice wagon, because then detached from it and made dependent upon the boy for its motion, it had not gotten out of the way. But, even if that hypothesis be not well supported, the fact remains that the ice wagon and the little wagon were always in plain sight of the chauffeur, who could see that the little wagon was a rickety affair, managed by two little boys, and was hitched to the ice wagon, and common prudence should have suggested that it was a dangerous thing, for the boys, for him to blow his horn, compel the ice wagon to turn, and attempt, at practically the same moment, to pass them within 3 feet at the rate of 10 miles an hour; nor was there any reason for his doing so, since he had a clear space of 10 or 12 feet on the roadway to his left, which was open to him."
*112 In Stamps v. Henderson, supra, involving injuries to a young girl, aged 9½ years, citing Guillory v. Horecky, supra, and again not applying the doctrine of last clear chance but concluding that the negligence of the driver of the vehicle was the sole and proximate cause of the accident, where the child was first observed at a distance of 100 feet and the driver was traveling well within the lawful speed limit, the court said:
"And so we hold in this case; that is, that regardless of whether or not the injured girl was capable of being contributorily negligent in connection with the accident, such negligence was not the proximate cause of the accident.
Other cases, among the many, in point or nearly so, are Cimo v. Karstendick, La.App., 173 So. 548, and cases and authorities therein cited; Doyle et ux. v. Nelson et al., La.App., 11 So.2d 645, wherein many cases from various jurisdictions are cited and quoted from.
In the Cimo case, the court emphasized the lack of discretion on the part of children as a factor in accidents wherein they are injured, and in referring to the adult operator of the vehicle, said (173 So. 550): `He must so manage his car that the children need not, to avoid injury, exercise the care that is expected of adults.'"
In Haywood v. Fidelity Mutual Insurance Company of Indianapolis, supra, the defendant motorist was traveling east on Louisiana Highway 35 when he observed several children (whom he thought to be adults) on the opposite shoulder of the road. He removed his foot from the accelerator, sounded his horn, but continued at 50 miles per hour. One of the four children, aged 11 years, "skipped" some 15 feet across the highway and into defendant's path of travel. Speaking for this court the late Judge Robert Ellis stated: (47 So.2d p. 61)
"Under the factual set up in the instant case, the defendant Pettit had the last clear chance to avoid the accident, and even should this child be held guilty of contributory negligence the defendant violated all the rules of the road as set out by the jurisprudence of our state relative to children playing, standing, sitting or being along the public highways. This defendant is presumed to have seen what he should have seen, and under the holding in Jackson v. Cook, 189 La. 860, 181 So. 195, he should have brought his car under such control when he saw this imminent danger that the accident could have been avoided, and, also, under the many, many cases which have held that when a motorist sees a child of tender years along a highway he must bring his car under such control that an accident can be avoided regardless of any unexpected or expected action on the part of the child. See the cases cited under Guillory v. Horecky, supra, Stamps v. Henderson, supra. There was absolutely nothing to prevent the defendant Pettit from seeing these children."
The youth involved in Ates v. State Farm Mutual Automobile Ins. Co., supra, was 9½ years of age and was proceeding on his bicycle on the right hand graveled shoulder of the road but in the same direction as a following motorist. Said motorist observed the youth weaving slightly and reduced her speed of 40 miles an hour to approximately 30 to 35 miles an hour and sounded her horn. The youth lost control of his bicycle and swerved into defendant's lane of traffic at a distance of 20 to 30 feet of defendant's automobile. In affirming judgment for the plaintiff the court said: (191 So.2d p. 334)
"The jurisprudence of this state places the highest duty of care upon persons operating automobiles on the public streets and highways in the vicinity of small children. See Haywood v. Fidelity Mutual Insurance Company, La.App. 1 Cir., 1950, 47 So.2d 59; Stamps v. Henderson, La.App. 2 Cir., 1946, 25 So. 2d 305; Cormier v. Sinegal, 180 So.2d 567, La.App. 3 Cir., 1965, and authorities *113 cited therein. This burden is not discharged by merely blowing a horn in warning or reducing one's speed below the maximum limit. A motorist encountering children upon the roadside must anticipate that the very young are possessed of but limited judgment and that their actions are likely to be sudden, unpredictable and often foolish. The trial judge found that Mrs. Frye had failed to exercise the necessary degree of care because she failed to have her vehicle under proper control and because she accelerated her automobile when she neared the young bicycle-rider zigzagging on the gravel shoulder of the highway. We think that the court's finding of negligence is amply supported by the 60-odd feet of skid marks left by Mrs. Frye's station wagon after its collision with the bicycle. The length of these marks is mute testimony of Mrs. Frye's lack of control over her vehicle and her failure to appreciate the obvious danger implicit in the plaintiff's situation. We find no manifest error in the finding of negligence on the part of defendant's insured, Mrs. Frye." (Emphasis added)
In Biggs v. Verbois, supra, eleven year old daughter of plaintiff was riding her bicycle and while attempting to cross an intersection was struck by a motorist who only saw the child "just a flicker" before impact. Notwithstanding the fact that the child failed to obey a stop sign, this court, again through Judge Robert Ellis, stated: (151 So.2d p. 181)
"The question posed is whether the trial court erred in holding that the last clear chance doctrine was applicable under the facts in this case. There can be no doubt from the testimony in this case but that Patricia Biggs was in a position of peril of which she was unaware as shown by a previous discussion of the facts. Secondly, Mrs. Verbois was in a position where she should have discovered the child's peril for there was not the least obstruction to interfere with her clear vision of not only the entire intersection but for a distance south of the stop sign which was located 12 feet from the intersection. From the photographs introduced in evidence and the record itself, we believe that that Mrs. Verbois could have seen this intersection and the stop sign several hundred feet, and without a doubt 150 feet, while traveling in the north traffic lane in a westerly direction. For some unexplainable reason, she was evidently so oblivious to her surroundings that when asked if there were any cars parked on the side of Evangeline Street as she approached the intersection she answered: `I didn't look to the sides. * * *'". (Emphasis ours)
Finally, we cite as apposite to the facts herein presented the case of Ingram v. McCorkle, La.App., 121 So.2d 303. There a fifteen year old girl was crossing Hooper Road in East Baton Rouge Parish and was clearly visible for a distance of 125 feet to an approaching motorist traveling at 40 miles per hour. In affirming the trial judge's decision, we stated: (p. 305)
"In the present instance, the defendants' driver had a clear field of vision of at least 125 feet during which he could and should have observed the pedestrian crossing the 21-foot wide Hooper Road at a fast walk or semi-run, obviously oblivious to the oncoming motor vehicle, despite which the motorist did not see Linda Fay until about 18 feet distant. The defendants' automobile did not strike Linda Fay until she had crossed 19 feet of the roadway and was just two feet short of completing her crossing, and it was thereafter brought to a stop within 66 feet after the impact. This indicates that by an earlier observation the defendants' driver could reasonably have stopped or slowed his vehicle so as to permit the pedestrian to complete her crossing in safety.
We think, therefore, that the trial court properly held that the defendants' driver had the last clear chance to avoid the accident and accordingly held the defendants *114 liable for Linda Fay's injuries." (Emphasis added)
The above cases have been referred to by us because they clearly set forth the high degree of caution required of a motorist and the resulting duty imposed on such motorist when children are observed or should have been observed by the proper exercise of care on or near a street, road or public thoroughfare. In the Guillory, Albert and Stamps Cases, supra, the actions of the defendants therein and their respective failures to recognize and satisfy this high duty were held to be negligence which acts of negligence were the sole and proximate causes of the accidents. In each, the children were of sufficient ages to be held contributorily negligent. However, said children's conduct and acts of negligence were held not to be contributing causes. In the Haywood, Ates, Biggs and Ingram Cases, supra, the doctrine of last clear chance was applied and the defendants in each were held to have had sufficient time to avoid the accidents notwithstanding continuing negligence on the part of the youths involved.
Thus, we shall apply the above doctrines to the facts in the instant case. In so doing we state that the facts herein found are not in basic dispute for we take them as stated by defendant Hill and corroborated and amplified by witnesses, Blackwell and Chandler. Further, we are not here called upon to reverse the judgment of the trial court on a question of fact. We do, however, find that the district judge committed as a matter of law manifest error in his failure to hold that the above cited rules and authorities were not applicable to and controlling of the facts as herein presented.
The salient facts of this case which render it stronger in our opinion than the cases above quoted invoking the doctrine of last clear chance are numerous. The Tate youth was clearly observed by Hill from a distance of 300 feet, so we are not confronted with the task of requiring Hill to see that which he should have seen. The boy was also then recognized by Hill as a youth. Further, the entire action of this youth was one of movement and that movement was in the direction of the highway and clearly indicative of an impending perilous situation. Further, the lad did not hesitate in his action until he was at a point approximately in the center of Hill's opposite lane of traffic. Even then, Hill did not apply his brakes but waited until it was clear to him that the boy had recommitted himself to continue on across the highway. These are Hill's admissions.
It is significant to us that the point of impact was near the Sr. Tate's driveway and that Hill's skid marks did not commence until contact was made and continued for a distance of 120 feet to a point where his vehicle came to a stop. The testimony of Blackwell on this point is clear and remains uncontroverted.
We are urged not to overemphasize the action of Blackwell the oncoming motorist who from all appearances to us fully recognized and responded to the high duty required of him under the circumstances. This admonition is directed more to whether Hill improperly failed to act than it is to whether Blackwell did properly react. We are reminded that Blackwell first observed young Tate at an additional distance of some 150 feet than did Hill. Yet, the fact remains that Blackwell successfully brought his vehicle to a stop 120 feet short of the point of impact. It is not Blackwell's actions that we give weight to herein but his testimony as to the action of young Tate, distances involved and other circumstances.
It would be easy and relatively simple for us to say that Blackwell acted reasonably under the circumstances and hence was not involved in the accident; that Hill did not act as did Blackwell and therefore Hill's actions were unreasonable and he should be held liable. Seldom is there so simple a solution.
*115 Under the facts of this case, it is clear that Hill did nothing reasonably available to him with respect to avoiding this accident. Once seeing the boy running in the ditch on the shoulder of the road from a distance of 300 feet, Hill could have started slowing his vehicle to a speed which would have allowed him to stop on short notice. By his own admission he traveled an additional 200 feet before he took any action whatsoever and when he did it was too late. Even at the point of the lad's hesitation, defendant Hill still presumed that the youth would see the oncoming pickup truck and thus retreat to a position of safety. So oblivious to the perilous situation unfolding before his very eyes was Hill that at no time did he sound his horn to warn the youth or call the lad's attention to his (Hill's) own approach. The circumstances in this case are vastly different from those involving youthful cyclists or pedestrians who, while standing on the side of or traveling along a highway or street, make a sudden unexpected move into a position of peril. Young Tate's position of peril commenced insofar as Hill is concerned from the moment he started running in the direction of the highway, this position increased in severity and certainty as the lad crossed the ditch, traversed the shoulder of the highway and entered the highway. At any time during the course of these events had the defendant Hill exercised any type of restraining action or done just about anything other than "wait and see", we would be constrained to absolve him of responsibility herein. But try as we may, we cannot ignore the fact that the defendant Hill wasted 200 feet of precious road space and crucial moments, sufficient though fleeting, in which to take any type of action which the circumstances dictated.
Accordingly, we hold that the doctrine of last clear chance is clearly applicable here and that the plaintiff has satisfied the legal requirements thereof.
With respect to damages claimed by the plaintiff, both individually for expenses incurred and for personal injuries sustained by the minor, it is conceded that plaintiff incurred expenses totaling $1,874.90; and that in the event of liability defendant, Connecticut Fire Insurance Company's policy in the amount of $5,000.00 shall be the limit of this defendant's liability.
Young Tate sustained multiple abrasions about the face and body; intra-abdominal injuries; fracture of the proximal third of the right femur (upper third of the right thigh bone); and, segmental fracture of the right tibia (large bone of the lower leg). He was hospitalized from March 6 until April 9, 1965. On March 6th a cast was placed during operative procedure enclosing the boy's right leg from the groin to the toes. On April 8, 1965, he was placed in a body cast from his rib cage to his toes on the right side and to his knee on the left side. This cast was removed on June 25, 1965 when a long leg cast was applied to his right leg. This cast was removed on August 12, 1965. When he was seen by an orthopedic specialist on January 13, 1966 he was still using one crutch and evidenced a "little limp". When the doctor's deposition was taken on March 3, 1966 the doctor estimated that young Tate should overcome the limp in 6 to 12 months. He also advised limited physical activity for a period of 6 months from the date of his deposition. This deposition was taken approximately 3 weeks after trial herein was heard in the district court. It was the doctor's opinion that subject to the above limitations and considering unforeseen complications young Tate should sustain little if any permanent residual injuries as a result of this accident. In our opinion an award to the plaintiff for the use and benefit of his minor son for personal injuries hereinabove described in the amount of $8,500.00 would be reasonable.
Accordingly, for the above and foregoing reasons the judgment of the district court finding for the defendants herein is reversed and set aside and judgment is rendered herein in favor of the plaintiff, Bennie G. Tate, Sr., and against defendants, Barney *116 W. Hill, Jr. and Connecticut Fire Insurance Company, jointly and in solido in the sum of $1,874.90; and, in favor of Bennie G. Tate, Sr. for the use and benefit of his minor son, Bennie G. Tate, Jr., against defendants Barney W. Hill, Jr. and Connecticut Fire Insurance Company, in the full and true sum of $3,125.10, jointly and in solido, together with legal interest thereon from date of judicial demand until paid and for all costs of court here and in the district court; judgment is further rendered herein in favor of Bennie G. Tate, Sr. for the use and benefit of his minor son, Bennie G. Tate, Jr., against defendant, Barney W. Hill, individually, in the full and true sum of $5,374.90, together with legal interest thereon from date of judicial demand until paid.
Reversed and rendered.