222 So.2d 504 (1969)
Robert SUTTON, Plaintiff-Appellant,
v.
Farris A. ROGERS, Defendant-Appellee.
No. 11209.
Court of Appeal of Louisiana, Second Circuit.
April 29, 1969.
Rehearing Denied May 27, 1969.
*505 O'Hearn & Gerhardt, Shreveport, La., for appellant.
Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for appellee.
Before AYRES, BOLIN and PRICE, JJ.
AYRES, Judge.
Reginald Earl Cenales, a minor, sustained injuries from which he died when struck by an automobile driven by defendant, Farris A. Rogers. Plaintiff, a grandfather of the minor, seeks by this action the recovery and reimbursement of hospital and medical expenses incurred in the treatment of the minor's injuries as well as funeral expenses required for his burial.
The defenses of freedom from negligence on defendant's part and of contributory negligence on the part of the minor were sustained and plaintiff's demands rejected. From the judgment, plaintiff appealed.
Plaintiff's responsibility for the payment of the medical and burial expenses is, under the facts of this case, founded on the provisions of LSA-C.C. Art. 229 which, in part, are:
"Children are bound to maintain their father and mother and other ascendants, who are in need; and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal." (Emphasis supplied.)
Cenales, 10½ years of age at the time of the accident June 17, 1964, was a child of the marriage of Victor Cenales and Dorothy Sutton, daughter of plaintiff, Robert Sutton. The child, when about three months of age, was abandoned by its parents. Neither has since contributed to his support; their whereabouts are unknown. The grandfather has been his sole means of livelihood.
The accident occurred near noon at the intersection of Hearne Avenue and Milam Street in Shreveport. Hearne Avenue, running in a general north and south course, is a four-lane main thoroughfare two lanes for traffic in each direction, separated by a grass-covered median. Milam, intersecting Hearne at right angles, is likewise a four-lane street but has no median.
Defendant, accompanied by a companion, was proceeding north on Hearne Avenue in a Buick automobile. As he approached Milam Street, he observed from a distance three youths on or near the sidewalk at the northeast corner of the street intersection. When defendant had reached a distance of 50-75 yards of the intersection, two of the youths sprinted westerly across Hearne Avenue, leaving Cenales, the youngest, standing on or near the sidewalk. Defendant driver, as he was entering, or about to enter, the intersection, directed his attention and vision to the overhead traffic signal light. Observing that the light was favorable for him to proceed, he continued and then, on again looking ahead, he saw Cenales out in the street in front of his car. Cenales reversed his course but the defendant swerved his car to the right and struck the youth before he could return to his place of safety. The injuries sustained by Cenales resulted in his death.
While his two companions crossed the street, Cenales was never observed by defendant or his guest to have looked toward the approaching automobile. Cenales was *506 said to have been apparently preoccupied with a towel in his hands, supposedly used after swimming in a nearby pool from which the three youths had recently departed. Though defendant and his companion observed the three children on or near the sidewalk as they approached the intersection, and then observed two of them running westward across the street, leaving Cenales on or near the sidewalk, defendant continued at a speed testified to have been 30-35 m. p. h. without sounding his horn or giving other warning of his approach to the intersection. The record, in fact, establishes that defendant did not see Cenales leaving his place of safety on or near the sidewalk, or observe him as he entered the street. Defendant first saw Cenales in the street in front of his car after diverting his attention and vision from the street light to the street.
The jurisprudence, well established in this State, places the highest degree of care upon motorists operating automobiles on the public streets and highways in the vicinity of small children. Guillory v. Horecky, 185 La. 21, 168 So. 481 (1936); McGraw v. Crook, 205 So.2d 200 (La.App., 2d Cir. 1967); Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App., 3d Cir. 1966); Cormier v. Sinegal, 180 So.2d 567 (La.App., 3d Cir. 1965); Haywood v. Fidelity Mut. Ins. Co. of Indianapolis, 47 So.2d 59 (La.App., 1st Cir. 1950); Stamps v. Henderson, 25 So.2d 305 (La.App., 2d Cir. 1946); Cimo v. Karstendiek, 173 So. 548 (La.App., Orls. 1937). Thus, a motorist encountering children near streets or highways must anticipate that the very young are possessed of but limited judgment, and that their actions are likely to be sudden, unpredictable, and often foolish. McGraw v. Crook, supra; Ates v. State Farm Mutual Automobile Insurance Co., supra.
In Guillory v. Horecky, supra, the record established that children were playing tag, and that the truck driver saw them running and playing as he approached them. With reference to those facts, the court observed:
"The situation called at once, on his part, for great care. He should have gotten down to very moderate speed and held his truck well in hand, ready to stop or swerve as might be necessary to avoid the result of an impulsive act on the part of the children." 168 So. 481, 483.
In that case, the testimony was conflicting as to the truck's speed. It was estimated by a witness at between 10 and 15 m. p. h.; by another at 15 or 20 m. p. h.; and by another at from 20-25 m. p. h. Speed was held to be immaterial in that instance. The court again observed:
"Suffice it to say that the driver did not operate his vehicle, after having seen the children, with such prudence and care and under such control that he could have instantly stopped the truck and avoided the accident." (Emphasis supplied.) 168 So. 481, 483.
It was accordingly held that the continued operation of the truck within five feet of the edge of the road, with the children only two or three feet from the edge of the ditch, at a speed of 20-25 m. p. h., was gross negligence on the part of the driver and a wanton disregard for the safety of the children.
Though it is negligence for a pedestrian to attempt to cross a street without looking for approaching traffic, in the case of children a tendency toward such heedlessness is recognized and knowledge of it is imputed to all motorists. In an appropriate comment, this court stated, in Moreau v. Southern Bell Telephone & Telegraph Co., 158 So. 412, 414 (La.App., 2d Cir. 1935):
"It is for this reason that a greater degree of care is required of them when children are seen along the road. It would be unreasonable to say that drivers are required to anticipate heedlessness on the part of children, but, if they *507 do not, no liability attaches, because the children are contributorily negligent in being heedless."
From the facts detailed above and in view of the jurisprudence to which we have referred, the conclusion is inescapable that defendant was negligent and that his negligence constituted a proximate cause of the accident, for, having seen the three children and having observed two of them sprint across the street, he should have anticipated that Cenales would probably follow his companions. This is particularly true in view of the fact that Cenales, to his knowledge, had not seen the approaching car. These facts, together with defendant's failure to sound his horn or to give some other warning of his approach, or to reduce his speed to enable him to take immediate action to avoid striking the child, establish defendant's negligence.
Under the codal provision hereinabove quoted, plaintiff, as a grandfather of the decedent child, was obligated to maintain his needy descendant. Jefferson v. Jefferson, 246 La. 1, 163 So.2d 74, 78 (1964); Tolley v. Karcher, 196 La. 685, 200 So. 4 (1941); Nations v. Nations, 128 So.2d 228 (La.App., 2d Cir. 1961). There can be, in our opinion, no greater need or necessity, under the circumstances of this case, than proper hospital and medical treatment and an appropriate interment. For the payment of these expenses, the grandfather was under a clear legal obligation produced and thrust upon him by the wrongful acts of the defendant. The provision of LSA-C.C. Art. 2315 that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *." is obviously appropriate to the situation here. Except for defendant's tortious acts, plaintiff would not have been required to furnish his minor grandson hospital and medical expenses and to provide for his interment. To the extent of these expenditures, the amount of which is stipulated, plaintiff directly and individually sustained damages to which he is entitled to be reimbursed by the defendant.
Should it be held that the minor grandson was capable of or guilty of contributory negligence, there is no basis for the imputation of his negligence to plaintiff, his grandfather. The rule is that, unless one can be held responsible, as a matter of law, for the torts of a person whose negligence is sought to be charged to him, the doctrine of imputed negligence cannot be applied. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, 153 (1963); Coleman v. Argonaut Insurance Company, 187 So.2d 495, 500 (La.App., 3d Cir. 1966). Under LSA-C.C. Art. 2318, that responsibility attaches only to the father or, after his decease, to the mother or to the tutor of the minor. Since as pointed out in Keenan v. Wactor, 130 So.2d 800, 804 (La.App., 3d Cir. 1961), a grandfather not qualified as tutor of his grandchild is not liable for the latter's torts in the absence of special circumstances not shown to exist here, it was error to impute the grandson's contributory negligence, if any, to the grandfather. Jackson v. Ratliff, 84 So.2d 103 (La.App., Orls. 1955); Coleman v. Argonaut Insurance Company, supra.
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiff, Robert Sutton, against the defendant, Farris A. Rogers, for the full sum of $965.50, with legal interest thereon from judicial demand until paid, and for all costs.
Reversed and rendered.