CULPEPPER, Judge.
Plaintiffs seek damages for the wrongful death of their 11 year old son, Henry Boudreaux. The boy was killed instantly when the bicycle he was riding collided with an automobile driven by Mark David Knox, 15 years of age. Defendants are the father and the insurer of the motorist. The district judge held for the defendants. Plaintiffs appealed.
The issues are: (1) Was the motorist negligent? (2) If so, was the decedent contributorily negligent? (3) If so, did the motorist have the last clear chance to avoid the accident?
GENERAL FACTS
The accident occurred in a residential area near the City of Lake Charles at the T-intersection of Nelson Road and Cappy Drive. Nelson Road runs North and South, has an asphalt surface approximately 20 feet in width, shell and grassy shoulders about 6 feet wide and shallow ditches on each side. Cappy Drive extends east from Nelson Road. It has a shell surface about 20 feet in width. Nelson Road has the right of way. The speed limit is 25 miles per hour. It was a clear day and visibility was good.
The Boudreaux home is located on the West side of Nelson Road, just North of the intersection. The 11 year old boy, Henry, and his brother were in the yard taking turns riding a bicycle. Henry rode East down Cappy Drive and then returned in a westerly direction toward Nelson Road. He was peddling fast and did not slow down or stop for the intersection. As Henry reached the asphalt on Nelson Road, he apparently saw the Knox automobile approaching from the North. He put his foot down, as if trying to stop the bicycle, and turned to the left. Nevertheless, the bicycle struck the left front of the automobile at a point in the southwest quadrant of the intersection. The impact caused the boy’s body to fly up and strike the left side of the windshield of the automobile and then go over the top of the car, landing on the pavement. Henry was killed instantly.
NEGLIGENCE OF THE MOTORIST
The Knox youth testified he was driving South on Nelson Road at a speed of about 25 miles per hour. Using a plat prepared by a surveyor, he says that he was at point A, which is in front of the Boudreaux driveway about 75 feet from the point of impact, when he first saw the boy peddling fast on Cappy Drive at point X, which is about 30 feet from the asphalt on Nelson Drive. Young Knox testified he thought the boy would either stop or turn before *712 reaching the intersection, so he continued at his same rate of speed. When the bicycle reached a point about 7 feet from the asphalt on Nelson Road, he realized it was not going to stop. He says he was then at point B on the map, which is about 40 feet from the point of impact. Immediately, he applied his brakes and began to skid. He turned to the right, and at the time of impact both of his right-hand wheels were on the shoulder. After the impact, he let up on his brakes to avoid a “panic stop” which might have caused him to go into the ditch on the right-hand side of the road. However, he continued to brake his vehicle and stopped at a point near a utility pole about 110 feet South of the point of impact.
A passenger in the Knox vehicle testified that he first saw the bicycle on Cappy Drive approximately 110 feet East of Nelson Road. At which time, the automobile was in front of the Fritz residence, approximately 180 feet from the point of impact. He then looked back to his right and did not observe the bicycle again until Knox applied the brakes.
Much of the testimony concerns the skidmarks and stopping distance of the Knox vehicle. Several of plaintiffs’ witnesses testified that after the accident they found skidmarks beginning at the Fritz driveway and extending past the intersection, a total distance of about 200 feet. However, the state trooper who investigated the accident found only 72 feet of skid-marks, beginning in front of the Boud-reaux residence and extending to a speed limit sign about 15 feet South of the point of impact, beyond which the trooper says the Knox vehicle left no skidmarks.
The district judge has given young Knox every benefit of doubt in finding his speed to be only 30 to 35 miles per hour. The automobile left 72 feet of clear skid-marks, and was still going fast enough that the driver was afraid of making a panic stop. He let up on the brakes and stopped as soon as he could, but without skidding, after covering an additional 80 to 90 feet. Obviously, he was driving substantially over 25 miles per hour. This excessive speed was negligence per se and a substantial cause in fact of the accident.
THE DECEDENT’S CONTRIBUTORY NEGLIGENCE
The district judge correctly found the 11 year old boy contributorily negligent. The evidence shows he was peddling fast and did not attempt to stop or slow down until he was on Nelson Road and it was too late to avoid the accident. His lookout was deficient, and he failed to yield the right of way.
LAST CLEAR CHANCE
Our jurisprudence has established three requirements for the application of the doctrine of last clear chance: (1) Plaintiff must be in a position of peril, of which he is unaware or from which he is unable to extricate himself. (2) Plaintiff must show that defendant discovered or, with the exercise of reasonable care, should have discovered plaintiff’s peril. (3) It must be shown that when defendant discovered or should have discovered plaintiff’s peril, defendant had a reasonable opportunity to avoid the accident. See the similar case of Tate v. Hill, 197 So.2d 107 (La.App.1st Cir. 1967).
The district judge found the third listed requirement lacking. He reasoned that the driver of the automobile had a right to assume that the boy on the bicycle would stop or turn, until the boy was 6 or 7 feet from the edge of the asphalt, by which time the motorist did not have a reasonable opportunity to avoid the accident. The judge relied on the rule that where two vehicles are approaching an intersection, the driver on the favored thoroughfare has the right to assume that the less favored driver will yield the right of way, and he can indulge in this assumption until he sees or should see that the other driver is not *713 going to yield, Doucette v. Primeaux, 180 So.2d 866 (La.App.3rd Cir. 1965).
However, the above stated rule of law has no application where the vehicle approaching on the less favored street is a bicycle being peddled fast by an 11 year old boy. Our jurisprudence places a high duty of care on a motorist who sees a child near the roadside. He must anticipate that the actions of a child are likely to be foolish, unpredictable and in disregard of his own safety. The motorist is required to bring his vehicle under such control that an accident can be avoided regardless of the actions of the child. See Ates v. State Farm Mutual Automobile Insurance Company, 191 So.2d 332 (La.App.3rd Cir. 1966) and the cases cited.
The applicable law is stated in Tate v. Hill, 197 So.2d 107 (La.App.1st Cir. 1967) writ refused. There the defendant motorist saw a 12 year old pedestrian running toward the highway at a distance of 300 feet ahead. Yet he continued at a speed of 55 miles per hour for another 200 feet until the child crossed the shoulder and stepped onto the road. At which point, the motorist applied his brakes for the last 100 feet but could not avoid hitting the boy. The court reviews many similar cases and holds that under such circumstances a motorist does not have a right to assume that a child will stop before running into the path of the automobile.
Applying the rule of these cases to the present matter, when young Knox saw the boy on Cappy Drive, 30 feet from the asphalt, and peddling fast toward the intersection, he had no right to assume the boy would stop or turn. The motorist should have immediately applied his brakes and brought his vehicle under such control that he could avoid an accident, regardless of the unpredictable actions of the child.
If the motorist had applied his brakes as soon as he saw and observed the boy on Cappy Drive, he could have avoided the accident. We note that although young Knox and his passenger both stated the brakes were applied at point B on the map, which is about 60 feet from the point of impact and 75 feet from the speed limit sign where the skidmarks stopped, this is physically impossible because nothing is allowed for reaction time. Accepting the state trooper’s measurement of 72 feet of skidmarks, this means that these marks actually started at point B. Under the stopping distance chart filed in evidence, 33 feet must be allowed for reaction time at 30 miles per hour. This means that the motorist started to apply his brakes about 105 feet from the speed limit sign. Of course, under his own testimony young Knox admits that he did not attempt to apply his brakes when he first saw the bicycle and, using his own figures from the map, he proceeded another 30 feet before he started to apply his brakes. Adding this 30 feet to the 105 feet, the motorist was 135 feet from the speed limit sign, and about 120 feet from the point of impact at the time he first saw the boy on the bicycle. Again giving the motorist every benefit of the doubt, and assuming his speed was 30 miles per hour, and using the stopping distance chart filed in evidence, a vehicle traveling at such speed under normal circumstances can be stopped in 79 feet, including reaction time.
THE QUANTUM OF THE AWARD
The evidence shows that Henry was an average 11 year old boy who lived in the home of his parents with several brothers and sisters. Recent cases have awarded $10,000 to $20,000 to each parent for the wrongful death of a child. See Sylvester v. Liberty Mutual Insurance Company, 237 So.2d 431 (La.App.3rd Cir. 1970), reaffirmed La.App., 245 So.2d 497, writ refused 258 La. 579, 247 So.2d 395; Womax v. Earl Gibbon Transport, Inc., 226 So.2d 573 (La.App.4th Cir. 1969); Miller v. Kinney, La.App., 213 So.2d 124; Breaux v. Flithers, La.App., 144 So.2d 574.
*714 We find an award in general damages of $15,000 per parent is appropriate in the present case. In addition, the father is entitled to funeral expense in the sum of $1626 and $100 for the cost of a burial lot.
The parties stipulated that the liability of the defendant insurer is limited to $25,000, which is the limit of coverage under its policy.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Jack Boudreaux, for the sum of $16,726, and in favor of Mrs. Lula Savoy Boudreaux for the sum of $15,000, against the defendants, Cecil Robert Knox and Allstate Insurance Company, insólido, together with legal interest thereon from date of judicial demand until paid, the liability of the defendant Allstate Insurance Company being limited to $25,000 as set forth in its policy. All costs both in the trial and appellate courts are assessed against defendants.
Reversed and rendered.