273 So.2d 590 (1973)
Janie HAMILTON, Plaintiff-Appellant,
v.
Clifton D. TURNER and United States Fidelity and Guaranty Company, Defendants-Appellees.
No. 9191.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
*591 Arnold J. Gibbs, Baton Rouge, for plaintiff-appellant.
Daniel R. Atkinson, Dale, Owen, Richardson, Taylor & Mathews, Wm. J. Doran, Jr., Asst. Gen. Counsel, Highway Dept., Baton Rouge, for defendants-appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
PICKETT, Judge.
The plaintiff instituted this action against Clifton D. Turner and his insurer, United States Fidelity and Guaranty Company, to recover damages in the sum of $50,731.00 for the death of her minor son, Clarence Haynes, Jr., who on September 9, 1970, was drowned in a pond situated on the land of defendant Turner. Answering, the defendants generally denied plaintiff's allegations, and affirmatively plead defenses that will be more fully discussed hereinafter. The defendants filed a third party petition in which the State of Louisiana through the Department of Highways was made a party defendant. The case was tried by a jury, and judgment was rendered in favor of defendants. The plaintiff has appealed.
The evidence shows that defendant Turner is the owner of a tract of land containing approximately fifty acres in East Baton Rouge Parish, but outside of the corporate limits of Baton Rouge, and northerly from that City, on the west side of, and adjacent to, U. S. Highway 61, which is, also, known as the Plank Road. The land was enclosed with a four strand barbed wire fence. Defendant Turner testified that he maintained about forty head of cattle on this tract of land. In August and September of 1963, he caused a pond to be dug on this land to furnish his cattle with water. At that time, the Louisiana Department of Highways was repairing the nearby highway; and the Highway's contractor needed dirt to be used in the highway work. The defendant Turner reached an agreement with the contractor to excavate a stock pond, in consideration of which he gave him the dirt therefrom without cost, but stipulated that the pond should be deep enough to prevent his cattle wading in it. The pond was excavated to a depth of approximately thirteen feet in the center, and about six feet at the north and south ends, and sloping toward the middle. The banks were abrupt. The pond, when completed, was eighty-three feet long and fifty-three feet wide. It was located back on defendant's land quite some distance from the Plank Road, which was the nearest public road.
*592 The plaintiff's son, Clarence Haynes, Jr., was drowned on September 9, 1970, in the above mentioned stock pond. Prior to the accident above mentioned, defendant Turner had sold a small tract of his land in the Southeast corner thereof to a Jonas Haynie. On September 9, 1970, a picnic and an informal horse show was held on the Haynie tract of land. A number of people, estimated at from 25 to 100, attended the picnic. Clarence Haynes, Jr., who was thirteen years and eleven months old at that time, and his mother Janie Hamilton, the plaintiff herein, were among those who attended the picnic. The plaintiff left her son at the picnic area, and went home. Some of the young men, including Clarence Haynes, Jr., climbed or went through a barbed wire fence enclosing the picnic area and went to the stock pond located on defendant Turner's land. Clarence Haynes, Jr. began to undress to go in the water. Uleas Evans, Jr., who was standing nearby, asked Clarence Haynes, Jr. if he could swim and admonished him not to go in the pond unless he could swim. Jonas Haynie, Jr., who was already swimming in the pond, on observing that Clarence Haynes, Jr. was about to go in the water, told him not to go in the pond unless he could swim. But he told both of those witnesses that he could swim; and he jumped in the water and drowned before anyone could rescue him. The youth's body was recovered later that day but all efforts to revive him were futile.
The plaintiff's case is obviously founded on the attractive nuisance doctrine. The elements of negligence charged to the defendant Turner are that the tragic death of the plaintiff's son by drowning resulted from Turner constructing and maintaining a dangerously deep stock pond with abrupt banks on his land easily accessible to children, whose presence in the area he knew of, or should have reasonably anticipated, because of the nearness to a housing subdivision, without his having provided a fence or other adequate safeguards or protection for children who frequented the area to his knowledge.
There are two witnesses to the death of the youth by drowning. Both of these witnesses, Jonas Haynie, Jr. and Uleas Evans, testified that they warned young Haynes that he should not go in the pond unless he could swim. He assured them that he could swim and jumped in the pond and drowned before he could be rescued.
The plaintiff relies strongly upon Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791. In this case, the parents recovered for the loss of a child drowned in a large pool. In that case, our Supreme Court said:
"But was this pool unusually attractive to and dangerous for children? Was there a strong likelihood of an accident? Could the presence of children be reasonably anticipated? Did defendant fail to take precautions for the protection of children such as a reasonably prudent person would have taken under the circumstances? For the attractive nuisance doctrine to be applicable here all of these questions, which are interrelated and may be discussed together, must be answered in the affirmative."
The stock pond was situated almost 1,000 feet from the public road and from any place where young children lived or congregated. Defendant Turner testified that he had never given anyone permission to go on his lands except Jonas Haynie and that permission was limited to a right of passage until he could construct a driveway of his own. There is no evidence that trespassers or young children frequented the area of the stock pond. Defendant Turner said that he had not been aware before the day of the tragedy that children had ever been seen in the immediate area of his stock pond, or that any had ever gone swimming there. He explained that his reason for having steep banks to the pond was to prevent his cattle wading in the pond and muddying the water. Furthermore, *593 the land owned by defendant Turner was surrounded by a fence, although the pond itself was not fenced for the obvious reason that it was constructed for the use of his cattle, and his cattle could not have had access to it if it had been fenced. The two young men who testified as witnesses to the drowning of the Haynes youth said the rodeo area where they attended the picnic was surrounded by a wire fence which they had to cross in order to go to the pond. The evidence shows that the pond was rather inaccessible and isolated. There is no evidence that the pond had any unusually attractive or outstanding features, other than water, that might attract children. It is so located that children could not have been attracted to it until after they had become trespassers on the defendant's property.
Considering all of the circumstances of this case, we do not believe defendant Turner had sufficient reason to believe that any substantial hazard existed because of the pond in the interior of his property that would cause a reasonably prudent landowner to take precautions against any foreseeable likelihood of an accident.
Applying the criteria of liability outlined in the Saxton case, supra, to the facts of the present case, we conclude that defendant Turner's stock pond was not an attractive nuisance.
It has been repeatedly held that a normal child of ten to twelve years may be guilty of contributory negligence. In the case of Patterson v. Recreation and Park Commission, 226 So.2d 211, this Court said:
"It has been repeatedly held that normal children of ten to twelve years of age may be guilty of contributory negligence depending on the circumstances of each case. See for example, White v. Hanover Ins. Co., supra [La.App., 201 So.2d 201]; Tate v. Hill, La.App., 197 So.2d 107; Cormier v. Sinegal, La.App., 180 So.2d 567; Lawrence v. Core, La.App., 132 So.2d 82. In such cases the child is not held to the same degree of care as an adult. Rather, the test is whether the particular child, considering his age, background and inherent intelligence, indulged in a gross disregard of hs own safety in the face of known, understood and perceived danger and whether there was intentional exposure to obvious danger in connection with nontechnical and ordinary objects and situations within the capacity of the child to understand and realize."
In Richards v. Firemen's Insurance, 238 So.2d 386, the Court of Appeal, Third Circuit, cited with approval the Patterson case, supra, and said:
"We conclude this accident was caused solely by the negligence of Johnny Richard. As stated above, Johnny was 12 years of age at the time of the accident and is legally capable of negligence."
Young Haynes was 13 years and 11 months old. There is no evidence that would indicate that young Haynes was of inferior intellect. On the contrary, his mother testified that he was a good student and had been promoted to the tenth grade in school. Therefore, we conclude that plaintiff's son possessed the mental faculties usually found in a youth of his age. The evidence conclusively shows that this youth was warned by his companions of the danger of going into the stock pond; and he was urgently admonished not to go into the water unless he could swim. We conclude that Clarence Haynes, Jr., was legally capable of negligence, and that his negligence was the cause of his untimely death.
For the above and foregoing reasons we find the verdict rendered by the jury in this case is supported by both the evidence and the law. Hence the judgment appealed from is affirmed at appellants' cost.
Affirmed.