290 So.2d 706 (1974)
Elnora YOUNG and Edward Young, Plaintiffs-Appellants,
v.
Dianne C. GRANT and the Aetna Casualty & Surety Company, Defendants-Appellees.
No. 9709.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 18, 1974.
*707 Robert H. Carpenter, Jr., Baton Rouge, for plaintiffs-appellants.
William Luther Wilson, Baton Rouge, for defendants-appellees.
Before SARTAIN, TUCKER[*] and WATSON, JJ.
SARTAIN, Judge.
The plaintiffs instituted this suit against Diane C. Grant and her insurer, The Aetna Casualty and Surety Company, to recover damages for the personal injuries sustained by their minor daughter, Loretta Young, in an automobile-bicycle collision which occurred in the City of Baton Rouge on January 11, 1971. Defendants answered plaintiffs' suit and reconvened for the damage to defendant-Diane C. Grant's automobile. After trial on the merits, the district court rendered judgment dismissing both demands. From that judgment plaintiffs took this devolutive appeal.
The evidence shows that at approximately 8:30 A.M. on the morning of January 11, 1971, plaintiffs' daughter, Loretta Young, who was ten years old at the time, was riding her bicycle in an easterly direction on the north side of 75th Avenue in the City of Baton Rouge. Dianne C. Grant was proceeding in a westerly direction on 75th Avenue in a 1965 Ford Mustang automobile. A collision between the bicycle and automobile occurred in the 2400 block of 75th Avenue. At the point of collision 75th Avenue is a two-lane, undivided, blacktop street and runs generally east and west. The blacktop surface is approximately 23 feet wide with shallow ditches on each side of the roadway. The posted speed limit is 25 miles per hour. It had been raining earlier that morning, and *708 it was foggy at the time of the accident. The surface of the roadway was described as wet.
Miss Grant testified that she was proceeding in a westerly direction on 75th Avenue at an estimated speed of 25 miles per hour. She stated that she did not see the bicycle until she was some two car lengths away. The child was on the north side of the road coming toward the Grant vehicle. Miss Grant testified that when the bicycle was about ten feet from her auto the child turned her bicycle in front of the car. Miss Grant stated that she applied her brakes and swerved to the left but the right front fender struck the front wheel of the bicycle. The Grant vehicle continued swerving to the left and came to rest in the ditch on the south side of 75th Avenue. Miss Grant further testified that at the time of the accident she had her windshield wipers and lights on.
Sergeant W. T. Bunch investigated the collision and testified that when he arrived at the scene some ten to fifteen minutes after the collision, Loretta Young was lying near the center of the roadway and the Grant vehicle was in the ditch on the south side of the road. Sergeant Bunch stated that the Grant vehicle left some 39 feet of skid marks which started in the westbound lane and veered across the road. Sergeant Bunch could not determine the exact point of impact and could not recall if the bicycle was still in the area when he arrived.
Mr. Lionel J. Meyers, a telephone repairman, witnessed the accident from a telephone pole on the north side of 75th Avenue immediately adjacent to the point where the accident occurred. Mr. Meyers testified that the collision occurred approximately six to eight feet to the west of his position on the pole and below him. He stated that he observed Loretta Young proceeding in an easterly direction on her bicycle along the north edge of 75th Avenue. Mr. Meyers then heard a car approaching from the east approximately twenty to thirty seconds after he first observed the child on the bicycle. Mr. Meyers turned and saw the Grant vehicle approaching from the east. He describes the ensuing collision as follows:
"Q Did you see the accident itself take place?
A Yes, sir, I did.
Q Would you describe to the Court what happened?
A Well, sir at the time of the accident, like I said, I had noticed the little girl and then I had heard the car coming down the street, and I glanced up and seen where the car was and just before the car got to me, I looked back to see where the little girl was in reference to the car, and just as I looked at her, she was looking back, I guess toward her home. I was told that her home was in that direction, in the west direction from me. And she was looking back toward her home at the time, and I don't know whether she realized that she was turning her bike at the time or not, but just as the car got to me she had turned her bike and was coming right in front of the car.
Q She had turned the bike from her position traveling easterly on the north side of the streetshe had turned the bike into the street?
A Right.
Q All right. Approximately how far away was the car from the bike when the child commenced to go into the street?
A The car was almost directly underneath me. It couldn't have been no more than about ten foot away from me.
Q Can you describe what reaction you observed in terms of the movement of the automobile?
*709 A Well, basically, the same thing as what the sergeant had said earlier. The caras she got to the bicycle I guess she was applying her brakes, and as she hit the little girl on the bicycle she went from her lane across the eastbound lane and into the ditch on the eastbound side of the road.
Q Did the brakes come on?
A Yes, sir, they did.
Q Did the car actually hit the child or did it hit the front of the bicycle?
A I would say, my observation, it hit more the front on the bicycle. I don't think it actually hit her.
Q Did any part of the car roll over the bicycle or did it knock it?
A No, sir, it just knocked it back to the same side of the street, the west side of the street."
Mr. Meyers also stated that it was a foggy morning but that he could see approximately 75 feet in either direction. He further testified that the Grant vehicle had its lights and windshield wipers on and was not going over approximately 25 miles per hour prior to the collision.
As a result of the collision Loretta Young sustained a concussion, several scalp lacerations and facial abrasions. Plaintiffs also seek recovery for emotional disturbance, personality change and aggravation of a pre-existing mentally retarded condition. Medical and other expenses in the total amount of $200.00 were stipulated at trial.
The trial court rendered judgment with written reasons therefor in which defendant-Diane C. Grant was held to have been negligent in failing to observe the child earlier. Loretta Young was held to have been guilty of contributory negligence by failing to perceive the danger of proceeding into the roadway in the path of the Grant vehicle. The trial court also held the doctrine of last clear chance inapplicable to the facts of this case.
Plaintiffs assert on this appeal that the trial court erred in holding Loretta Young guilty of contributory negligence. This is the only specification of error urged by plaintiffs. Defendants have not appealed nor have they answered plaintiffs' appeal and thus, the only issue presented is the correctness of the trial court's finding of contributory negligence on the part of plaintiffs' minor daughter.
Plaintiffs contend that this child was not capable of contributory negligence in view of her age and mental condition and that her action in turning her bicycle into the path of the Grant vehicle was not a negligent act under the test of contributory negligence of a child. Plaintiffs point to the testimony of Dr. Ronaldo Funes, pediatrician at the Mental Health Center, to the effect that Loretta Young is mentally retarded and has an I.Q. of from 40 to 45 in support of their contention that this child cannot be deemed capable of contributory negligence. Mrs. Elnora Young, the child's mother, also testified that Loretta was mentally retarded and was taking medication at the time of the accident for hyperactivity due to her mental condition.
The jurisprudence is clear to the effect that a child of nine or ten years of age may be capable of contributory negligence. White v. Hanover Insurance Company, 201 So.2d 201 (1st La.App. 1967); Jones v. Fireman's Insurance Company of Newark, N. J., 240 So.2d 780 (2nd La.App. 1970), writ refused, 256 La. 1143, 241 So. 2d 250 (1970). The test to be applied in evaluating whether the child's conduct constitutes contributory negligence is whether the particular child, considering his age, background and intelligence, indulged in a gross disregard of his own safety in the face of known, understood and perceived danger and whether there was an intentional exposure to an obvious danger in connection with nontechnical and ordinary objects and situations within the capacity *710 of the child to understand and realize. Cormier v. Sinegal, 180 So.2d 567 (3rd La.App.1965); Hamilton v. Turner, 273 So.2d 590 (1st La.App.1973); Brantley v. Brown, 277 So.2d 141 (La.1973).
The above stated test was applied by the trial judge in reaching his conclusion that this child was capable of contributory negligence. The judge a quo stated in written reasons for judgment that this child had experience in bicycle riding and must be held to have perceived the obvious danger of turning into the path of an oncoming vehicle.
The degree of caution to be expected of a child of such tender years varies with the circumstances of each given case. Tate v. Hill, 197 So.2d 107 (1st La. App.1967) writ refused, 250 La. 911, 199 So.2d 919 (1967). The jurisprudence is also to the effect that the burden of proving insufficient intelligence to be capable of contributory negligence rests upon the party seeking to negate the application of the rule of contributory negligence. White v. Hanover Insurance Company, supra.
Concerning the child's ability and experience in bicycle riding Mrs. Elnora Young, Loretta's mother, testified as follows:
"Q Mrs. Young, prior to this accident, had Loretta ever had an occasion to ride a bicycle before?
A Yes, she had. She could ride.
Q How long would you say she had been riding a bicycle?
A About six years.
Q From your observation, did she have any difficulty in handling the bicycle?
A No."
Mrs. Young also testified concerning Loretta's understanding and knowledge of the inherent dangers of bicycle riding as follows:
"Q Prior to the accident, you said she rode the bicycle a lot?
A Yes, she did.
Q Was she a pretty good bicycle rider?
A Wonderful.
Q You told her to watch for traffic and things like that?
A Yes, I did.
Q Do you think she was able to understand what you meant?
A Yes, she was.
Q You think she knew at that time that she had to keep an eye out for automobiles?
A She did, yes.
Q Had she ever been involved in an accident with an automobile before?
A No, she wasn't."
Mrs. Viola Selvage, a neighbor who knew the child, testified that she had observed Loretta riding a bicycle before the accident and that she had no difficulty in handling the bicycle.
While the fact that the child is mentally retarded is a factor to be taken into account in determining whether the child can be guilty of contributory negligence, once such account is taken, the child is still required to exercise the judgment of a reasonable person of like age, intelligence and experience. The testimony quoted above indicates that this child, ten years of age, and having about six years' experience in handling a bicycle was of sufficient capacity to realize the obvious danger of turning her bicycle into the path of an oncoming automobile only ten feet away from her despite her mentally retarded condition. While the age and the intelligence quotient of the child may raise some question as to her level of understanding, all of the evidence in the record *711 (and particularly the testimony of her mother, supra) supports the conclusion that she was a competent cyclist and that she appreciated the dangers of city traffic. We conclude that the trial court committed no manifest error in holding this action on the part of plaintiffs' daughter to be negligent conduct on her part in disregard for her safety in the face of a known and understood danger.
It is, therefore, unnecessary that we pass on defendants' third party demands against the child's parents (plaintiffs) for permitting their daughter to traverse city streets because of the child's mental deficiency.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellants' costs.
Affirmed.
NOTES
[*] TUCKER, J. died on the 25th day of January, 1974.